No. 610.

## THE PENNSYLVANIA COMPANY v. DOLAN.

RAILROAD.—*Master and Servant.*—*Injury of Servant.*—*Release of Company for Damages in Consideration of Future Employment.*—*Breach of Contract of Employment by Company.*—*Action for Damages for Breach.*—*Right to Recover.*— Where a person in the employ of a railroad company, as a brakeman, received injuries while in the discharge of his duties as such brakeman, and said company—in consideration of a written release by said employe, discharging the company from all liability arising out of the personal injury sustained by the servant, which release was executed—promised to pay the employe $100, and to give him steady and permanent employment at a compensation equal to that he was receiving from the company prior to receiving the injury, the parol agreement to pay the employe $100, and to give him steady and permanent employment, was an acknowledgment by the company of its liability for said injury, and the executed release was a sufficient consideration for such parol promise; and, if the railroad company, without any fault on the part of the employe, breaks said parol agreement, and discharges the employe from its employment, the employe may maintain an action for damages for the breach of the contract; and, in such action, the release need not be made a part of the complaint, as the action is on the parol promise of the company, and not on a written instrument.

SAME.—*Contract for Services.*—*Time, "Steady and Permanent."*—*How Construed.*—*Public Policy.*—*Contract in Violation of.*—A parol promise by a railroad company to furnish an employe "steady and permanent" employment, in consideration of a written release of all claims for damages against the company sustained by the employe while in the discharge of his duty as such employe, is not void for uncertainty and indefiniteness as to time of employment; but shows an agreement on the part of the company to retain the employe as long as the latter is able, ready and willing to perform such services as the company may have for him to do; and the fact that the company is a *quasi* public servant can not affect the promise of the company as being against public policy, for the rights of the public could not be affected thereby.

MASTER AND SERVANT.—*Contract of Employment.*—*Indefiniteness as to Time.*— *When not Terminable at Will.*—*Consideration Paid in Advance.*—Where A. hires B. and agrees to give him "steady and permanent" employment, on a consideration moving from B. to A., which is paid in advance, there is not a want of mutuality; and the rule that an employment for an indefinite time is an employment at the will of the parties does not apply in such a contract.

CONTRACT.—*Parol Collateral to Written.*— *When not Merged.*—*Consideration.*— A parol contract of employment, which is collateral to, and partly in consideration of, a written release by the employe to the employer, is not merged in the written release, and the consideration for the collateral contract may be proved.

SAME.—*Breach of.*—*Measure of Damages.*—*Facts in Mitigation of Damages.*— *Burden of Proof on Defendant.*—In an action for damages because of a breach of a contract of hire, the servant may treat the contract as continuing in force, and in such case the measure of damages would be the amount of wages he would have earned under the contract, deducting all such sums as he earned, or by reasonable diligence might have earned, elsewhere, and making allowance for the expenses of obtaining employment; and the burden is on the defendant to show that the plaintiff might have obtained other employment.

VARIANCE.—*Between Complaint and Proof.*—*When not Fatal.*—Where, in an action for breach of contract, the complaint averred the time of employment to be "steady and permanent," and the plaintiff testified upon the trial that the time for which the defendant had employed him was during his (plaintiff's) life, there is no such variance between the proof and the complaint as to be fatal.

STATUTE OF FRAUDS.—*Contract for Personal Services for Indefinite Period or Term of Years not Within.*—A contract personal in its character, as for personal services, which might terminate with the death of the party making it, though the contract be for an indefinite period, or a term of years, is not within the statute of frauds.

From the Clark Circuit Court.

*S. Stansifer*, for appellant.

REINHARD, J.—The first error of which the appellant complains is the overruling of its demurrer to the appellee's complaint, which, with the caption and formal parts omitted, is as follows: "The plaintiff James Dolan complains of the defendant, the Pennsylvania Company, and for cause of action says that the defendant company was, on the days and times of the grievances hereinafter mentioned, a railroad corporation duly organized and existing under the laws of the State of Indiana, owning, using and operating a line of railroad known as the Jeffersonville, Madison and Indianapolis Railroad, together with its locomotives, cars, switches, side-tracks and other appurtenances

thereto belonging, at the county of Clark, in said State; that on the 9th day of January, 1890, the plaintiff was in the service of the defendant, in the capacity of yard brakeman, at said county; that the defendant required of him, as a part of his duties as such brakeman, to couple and uncouple cars and assist in removing and transferring them from place to place on the defendant's track, in defendant's yard, and in the coupling and uncoupling of said cars the duties of plaintiff required him to pass in between them while they were in motion; that while the plaintiff was then and there engaged in the services of defendant in the line of his employment, and in the act of coupling defendant's cars, he received a permanent injury of his right hand, causing the loss of his thumb and forefinger, and, as a result thereof, permanently lost the natural and proper use and strength of his right hand and arm, and caused him thereby to suffer great pain in body and mind, and put him to great expense for medical and surgical aid and nursing in trying to cure himself of said injuries; that said injury was caused by the negligent failure of the defendant in knowingly allowing and permitting the drawheads and dead-woods attached to said cars to become broken and out of repair, and also in allowing and permitting the dead-woods to be and remain of uneven height on said cars, thereby rendering it very dangerous and hazardous to couple the same, which facts were well known to the defendant and unknown to the plaintiff; that said injury was caused by the negligence of the defendant, and without any fault or negligence on the part of the plaintiff; that by reason of said injury the defendant became liable to plaintiff in damages in the sum of five thousand dollars ($5,000); that at the time of receiving said injury plaintiff was earning and receiving from the defendant for his services the sum of two dollars per day for his said services; that the said injury rendered the plaintiff unfit and unable to continue in the service of the defendant as yard-

brakeman, and he was, for that reason, discharged from the service and pay of the defendant by the defendant; that thereafter, to wit, on the 31st day of January, 1890, the plaintiff called on the defendant and demanded of defendant the amount due him for said injuries, and requested the payment thereof; that defendant then promised and agreed to pay plaintiff therefor in full settlement and satisfaction for said debt and injury the sum of one hundred dollars in money and receive him back into their service, and re-employ him and give him a job of steady and permanent employment, and pay him therefor an amount per day for his services equal to the amount he was earning and receiving at the time of his severe injury; that said sum of one hundred dollars would be paid at once, and that he should be employed as soon as he was sufficiently recovered from his severe injuries as to be able to work; that the defendant required, as a condition to said promise and agreement, and as a further consideration therefor, that plaintiff should sign and execute a release to defendant, releasing defendant from all liability for damages and all claims and rights whatever growing out of said injury, and relinquishing all claims and rights to bring suit therefor; that the defendant promised and agreed that all the said promises and agreements would be faithfully and honestly carried out and performed by defendant in the event that the said promises, agreements and conditions were accepted by plaintiff. It was further provided and agreed by the parties that the said promises and agreements, when carried out and performed by defendant, should operate and be in full satisfaction and payment to plaintiff of all debts, damages and causes of action growing out of, or which might arise by reason of, said injury in any way. The plaintiff then accepted of said promises, agreements and conditions in full satisfaction and payment of his injuries; that afterwards, to wit, on the —— day of February, 1890, in pursuance of said promises, agreements, con-

ditions and acceptance thereof as aforesaid, the plaintiff and defendant, at the office of the defendant, in the city of Jeffersonville, in said county, and the defendant then and there, for the purpose of carrying out the said promises and agreements, paid to plaintiff the sum of one hundred dollars as a partial payment of the same, and the plaintiff then and there accepted of defendant the said sum of one hundred dollars as a partial payment and satisfaction of the promises and agreements of the defendant as agreed, and the plaintiff then and there signed and executed to defendant the release required by the defendant and agreed to by the parties as aforesaid, and to the full and complete satisfaction of the defendant, which release was received and accepted by defendant and is now in its possession; that afterwards, to wit, on the first day of March, 1890, when plaintiff had sufficiently recovered of his said injuries as to be able to go to work, he called on the defendant and notified it of that fact, and demanded that the defendant re-employ him; whereupon defendant at once employed him and gave him a job of flagging its trains, in which employment defendant kept and retained him about three months, when, without any cause or fault on the part of the plaintiff, the defendant discharged him from its services and pay, without giving any cause or reason to plaintiff for so doing; that during all the time of said three months' re-employment the plaintiff honestly and faithfully and properly discharged all the duties assigned him; that ever since the discharge of the plaintiff last above named the defendant has refused, and now refuses, to receive the plaintiff back into its service and give him a job of steady and permanent employment, or give him employment of any kind, or pay him any money, though often requested by plaintiff to do so; that the plaintiff was able, ready and willing to continue in the service of defendant, at flagging trains, and is now, and has been at all

times, able, ready and willing to flag trains, or do and perform any other service for defendant within his power to do, all of which facts, now and during all of said time, were well known to defendant; by reason of which facts and grievances plaintiff has, during all of said time, been out of employment and unable to earn any money, and has suffered great loss and damage thereby, in the sum of five thousand dollars; that the plaintiff has done and performed all the conditions, promises and agreements on his part to be done and performed by him in the premises as hereinbefore stated; that the defendant has failed and refuses to do and perform its promises and agreements in manner and form as above stated and set out. Wherefore," etc.

We think it readily appears from the foregoing complaint that the gravamen of the action is not the personal injury therein set out, but the breach of the contract pleaded. *Kentucky, etc., Cement Co. v. Cleveland*, 4 Ind. App. 171, 30 N. E. Rep. 802.

The liability of appellant for the injury is acknowledged by the agreement to compensate the appellee for the same. The question with which we are concerned, therefore, is not one of tort, but of pure contract. The appellee was injured by the appellant's negligence. The parties met and agreed to settle the controversy arising out of such injury, the appellant agreeing to pay the appellee in cash one hundred dollars, and to give him steady and permanent employment at a compensation equal to that he was receiving from the company prior to the sustaining of the injury. In consideration of the premises, the appellee agreed to execute to the appellant a written release, discharging the latter from all liability arising out of the personal injury sustained by the appellee, for which the appellant was liable to him.

There is no claim that the release was procured by fraud, nor can there be any question as to the sufficiency of the

consideration, as a parol promise to take the party back into employment is sufficient to that end. 20 Am. and Eng. Encyc. of Law, 762, n. 1.

The release was in writing. It is alleged that the instrument is in possession of the appellant, but it is not shown that it, or a copy thereof, had been demanded of the latter, and refused. It seems to have been the view of the pleader that it was necessary to make the release an exhibit. It is insisted on behalf of the appellant that, in order to make the excuse for not filing such exhibit valid, it should have been averred that the original or a copy of the instrument had been demanded of the appellant and refused. It is proper to state here that we do not regard the complaint as declaring upon a written instrument. The reasons for this must be obvious. In the first place the rule is well settled that where the contract declared upon is not all in writing, it is regarded as a parol contract. *Louisville, etc., R. W. Co.* v. *Reynolds*, 118 Ind. 170. But, aside from this, the action is not upon the release, but upon the promise of the appellant to do certain things for which the release was given, and of which it formed the consideration. We take it that if A. conveys to B. by deed a tract of land, for which B. agrees to pay A. a sum of money, in an action for the purchase price the deed is not the foundation of the suit, and need not be made an exhibit of the complaint. The agreement to pay is the foundation of such action, and whether or not notes or other writings had been executed for such purchase money, the complaint is in no sense based upon the deed. The pleading of the instrument first occurs generally in the answer or plea of the defendant, unless the action is brought to set aside the release, and if the plaintiff desires to controvert the release he must do so in his reply. 2 Estee's Pleading and Pr., 735, 736.

It was not necessary, therefore, to file the release, or a copy thereof, with the complaint as an exhibit.

The next objection is that the parol agreement relied upon is void for uncertainty. The expression that the appellant agrees to give the appellee " a job of steady and permanent employment " is not so vague and indefinite, as to time of performance, that its meaning may not be easily understood. Words are to be taken in their most usual and known signification, but they get their meaning almost wholly from the time, place and circumstances under which they are used. The words " steady and permanent" usually signify stability and duration, and this is especially true when they are applied to the subject matter and the peculiar circumstances under which they are here used. We think, when reasonably construed, they show an agreement on the part of appellant to furnish appellee with employment as long as the latter is able, ready and willing to perform such services as the company may have for him to perform.

The appellant's counsel suggests that, as the company is a *quasi* public servant, it would be against public policy to hold that the corporation could, by this kind of an agreement, "tie its hands." We do not so regard the matter. The rights of the public could in no manner be impaired or made to suffer by holding the appellant to its contract. It appears from the complaint that the appellee had been taken back into the employment of the company, and that he had performed his work satisfactorily and was discharged without cause. These facts are admitted by the demurrer. If the appellee, for any reason, was not fully able to do such work as the company might be in a position to give him, and ready and willing to do the same, this would be matter of defense for the answer.

The further contention of appellant's counsel is that the alleged parol agreement lacks the element of mutuality. He argues that in every contract of hiring and service there must be a twofold obligation—the one on the part of the employer to hire and the other on the part of the

employe to serve—and this must be for a definite time. He insists further that an employment for an indefinite time is an employment at the will of the parties; and so, when the term of service is left to the discretion of either party, it is at the will of either.

These propositions are doubtless correct as abstract statements of law, and whatever force they might have when applied to an ordinary case of hire, they can have no application where the consideration for the employment is paid, partially at least, as it was here, in advance. Suppose that, instead of the release executed by the appellee, he had paid the appellant five hundred dollars in cash, in consideration of which the latter had agreed to employ the former as a flagman in its yards, during his life, at the rate of two dollars per day. Could it be held that the want of mutuality would entitle the appellant to keep the five hundred dollars, and after a few months of employment and without any fault on his part, discharge him? We think not. There is no want of mutuality in such a case. The appellee has parted with value, and the appellant owes him a reciprocal obligation, and that is to furnish him work at stated wages to enable him to make a living, or partly so. There is no difference in principle between the case supposed and the one in hand. Here the appellee has relinquished a claim against the appellant that had a certain value. He has placed it beyond his power to recover upon that claim, and the appellant has received a corresponding benefit. The appellant, recognizing his obligation in the premises, gives the appellee employment for a short time, and then, without the latter's fault, and without any just cause, and in violation of the terms of its agreement, discharges him and leaves him in his crippled condition to buffet with the world as best he can. This is, in our estimation, a flagrant breach of contract, and courts exist to a poor purpose if they can give no redress for such a wrong.

We do not think the points as to want of mutuality and indefiniteness are well taken.

Having determined that the contract as to time is sufficiently definite, it follows, we think, that the rule must be applied that where a servant who has been hired for a definite period has been discharged by the master, before the expiration of such term, he has his remedy in an action for damages for the breach of the contract. *Richardson* v. *Eagle Machine Works*, 78 Ind. 422; 14 Am. and Eng. Encyc. of Law, 797; 2 Sutherland on Damages, 471; Wood on Master and Servant, 194; 1 Addison on Contracts (8 ed.), top p. 450, *et seq.*; 2 Sedgwick on Damages, sections 607, 664, *et seq.*

Some question might well be made upon the statute of fraud, which provides that no action can be maintained on a contract not in writing, that is not to be performed within one year from the making thereof. Section 4904, R. S. 1881, subd. 5.

It has, however, been frequently decided that where a contract is personal in its character, as a contract for personal services, which might terminate with the death of the party making it, though the contract be for an indefinite period or a term of years, it is not within the statute of frauds. *Hill* v. *Jamison*, 16 Ind. 125; *Indiana, etc., R. W. Co.* v. *Scearce*, 23 Ind. 223; *Straughan* v. *Indianapolis, etc., R. R. Co.*, 38 Ind. 185; *Marley* v. *Noblett*, 42 Ind. 85.

The case of *Hobbs* v. *Brush Electric Light Co.*, 75 Mich. 550, was a suit for personal injuries inflicted by the defendant's alleged negligence. It appeared on the trial that the plaintiff had signed a release executed in good faith, discharging the defendant from all liability, because the superintendent said he would give him steady employment. It was claimed on the part of the plaintiff on appeal that there was a total want of consideration, for the reason that no debt or obligation was created against the plaintiff, which he was bound in law to pay, the

promise to furnish steady employment being void by the statute of frauds because it was not in writing. As in the case at bar, no particular time was specified during which employment was to be furnished. The court held that the verbal promise to give plaintiff steady employment was a good consideration for the release, and would be valid for one year at least.

We are of the opinion that the complaint in the case before us states a good cause of action. This disposes of the first and second assignments, and we proceed to the next.

The third specification of error questions the correctness of the ruling in sustaining a demurrer to the second paragraph of the answer. This pleading sets out the written release and seeks to raise the point that the parol agreement to employ is merged in the written release. The paragraph is as follows:

" For a further and second paragraph of answer, the defendant says that said release stipulates and provides that said sum of one hundred dollars is the final and full consideration for all claims or demands whatsoever against the defendant for his alleged injuries. All as shown by copy of the release, which is herewith filed and made a part hereof."

Then follows a copy of the release, which is as follows:

" Know all men by these presents, that I, for and in consideration of one hundred dollars, to me paid by the Pennsylvania Company, the receipt whereof is hereby acknowledged, do release and discharge the Pennsylvania Company from the payment of any further sum or sums of money, for or on account of the claim I have or may have against said company, as above stated. And I hereby agree that this release shall operate as a bar to any suit at law, or otherwise, which I, or any of my heirs, executors, administrators or personal representatives may or can maintain by reason of claim as aforesaid. Witness my hand," etc.

It must be apparent that there is nothing in this answer, or in the written release accompanying it, that constitutes any defense to the action. There is no inconsistency between the instrument set out and the averments of the complaint in relation thereto. The doctrine that all the oral negotiations are merged in the written contract, and that the terms of the latter can not be varied by proof of a contemporaneous verbal agreement, does not apply. Even if the release were treated as the foundation of the action, the true consideration might be inquired into. This may be done even where the consideration expressed varies from or is contradicted by the true one. *Pickett* v. *Green,* 120 Ind. 584; *Levering* v. *Shockey,* 100 Ind. 558; *McMahan* v. *Stewart,* 23 Ind. 590; *Thompson* v. *Thompson,* 9 Ind. 323; *Rockhill* v. *Spraggs,* 9 Ind. 30.

The exception to this rule is where the parties have undertaken to specify the consideration in the writing, and where such consideration is contractual in its nature. In that case parol evidence to vary the terms of the agreement will not be admitted. *Reisterer* v. *Carpenter,* 124 Ind. 30; *Pickett* v. *Green, supra,* and cases cited; *Conant* v. *National, etc., Bank of Terre Haute,* 121 Ind. 323.

In the case at bar, the parol agreement to employ the appellee at a certain compensation was purely collateral to the release. If the parties had undertaken to put the terms of the consideration, so far as it relates to the employment, in the written release, perhaps they would be concluded by its recitals, inasmuch as such portion of the consideration is contractual in its character. In that event the instrument would be more than a release, however; it would embrace, also, the contract for future employment, and, in an action for the breach of such contract, the instrument would doubtless constitute the foundation.

But, as the writing is incomplete and does not contain a stipulation for a contractual consideration, nor an enforceable contract, extrinsic facts may be averred and proved,

showing its true consideration.   *Kentucky, etc., Cement Co.*
v. *Cleveland, supra.*

The demurrer to the answer was properly sustained.

The overruling of the motion for a new trial is the last
error assigned.   One of the reasons assigned in the motion
was the giving of instruction No. 6, and another the re-
fusal to give the appellant's 11th instruction.

We give below, from the brief of appellant's counsel, the
substance of the instruction given and the objections urged
against its correctness, together with his reasons for think-
ing that his own instruction should have been given instead.
He says:

" The court's 6th instruction relates to the measure of
damages, and, after stating that if the jury find so and so
(omitting the necessary element of mutuality and fixed
duration of contract), the plaintiff will be entitled to dam-
ages, and after warning the jury that there can be no
recovery for appellee's permanent injuries, declares that
the ' action is to recover damages for a breach of contract,
and the recovery must be limited to actual pecuniary loss
sustained by plaintiff on account of such breach since his
discharge from defendant's service, and what will probably
and reasonably be sustained by him hereafter.   In this
connection the jury may consider the plaintiff's age and
physical condition at the time of his discharge, and then,
presuming that, with habits of industry and sobriety, he
makes all proper and reasonable efforts to help himself,
how far will he fall short of being able to earn, in some
capacity, wages equivalent to the wages he was getting at
the time of his injury, and then the amount assessed must
be solely for the purpose of compensating plaintiff for the
loss which will reasonably and probably be sustained by
him on account of such breach of contract.'

" The instruction not only gives damages ' since the in-
jury,' but also future, for life damages.

" For the past, there was a tangible basis for ascertaining

or reasonably approximating actual damages because of inability to get employment elsewhere, and of his ability, habits, etc. For the future there is no such basis, all is mere speculation, guess work. The instruction proceeds upon the theory that the cause of claim is on an entirety, and can not, therefore, be divided. On the contrary, it is submitted that after the close of each day lost he could have sued for that day. Appellant's refused instruction 11, limiting the recovery to the 'present time,' is liberally correct, it is submitted.

"The instruction invites the presumption by the jury that appellee, with habits of sobriety and industry, would make all proper and reasonable efforts to help himself, and this, too, during life; and this, too, without success."

We have given the question raised by the learned counsel a careful consideration, and have come to the conclusion that the position taken by him is not tenable. A brief review of the authorities will supply the reason for this conclusion. *Richardson* v. *Eagle Machine Works, supra,* was an action by a servant against his master, who had hired the servant for a definite period and wrongfully discharged him before the expiration of the same. In the course of the opinion the court, by Niblack, J., makes use of the following language:

" Considerable uncertainty existed at one time as to the proper remedy upon the breach of a simple contract for labor for a specified time, or in some specific undertaking. But we think it may be safely inferred from the recently decided cases, that, where a servant has been wrongfully discharged before the conclusion of his term, he may, in addition to his right to recover for wages already earned, treat the contract of hiring as continuing on his part, and sue for damages for the breach by the master, or he may rescind the contract and recover the value of his services actually rendered.

" It was formerly held, that where, in such a case, the ser-

vant treated the contract as continuing in force, he might recover what was denominated constructive wages for the remainder of his term; but what might then have been denominated constructive wages is now included under the general head of damages resulting from the master's breach of the contract of employment. *Ricks* v. *Yates, Admr.*, 5 Ind. 115; *Moody* v. *Leverich*, 4 Daly, 401; *Gandell* v. *Pontigny*, 4 Campbell, 374.

\*    \*    \*

" The plaintiff having brought and prosecuted to final judgment one action for the defendant's breach of the contract sued on in this case, \* \* \* full damages might have been demanded and recovered in the first action. *Crosby* v. *Jeroloman*, 37 Ind. 264."

The case of *Hinchcliffe* v. *Koontz*, 121 Ind. 422, is a more recent one. Koontz sued the appellants to recover damages for the alleged breach of a contract, by which the appellants had hired Koontz to serve as their foreman in a brick-yard for one year, at a stated salary. It was there held, Mitchell, J., speaking for the court, that the measure of damages was, *prima facie*, the amount stipulated, subject to such reduction as might be made to appear proper, on the part of the defendant, by showing that the plaintiff either procured, or could, with reasonable efforts, have procured, other employment, or that he occupied his time at his own or other remunerative business.

Mr. Sedgwick, after stating that the authorities are in conflict upon this subject, declares the rule, as held by the recent decisions, to be that the plaintiff must recover his entire damages in one action, " and that the measure of damages is, therefore, the amount of wages due at the time of the trial, together with compensation for the future benefit the plaintiff would probably have realized under the contract, with the proper deductions." He further says : " It is the plaintiff's duty to use reasonable efforts to avoid loss by securing employment elsewhere. The

measure of damages is, therefore, the amount of wages he would have earned under the contract, deducting, however, such sums as he earned or by reasonable diligence might have earned elsewhere, and making allowance for the expenses of obtaining employment. The burden of proof is on the defendant to show that the plaintiff might have obtained other employment; for the failure of the plaintiff to obtain other employment does not affect the right of action, but only goes in reduction of damages, and if nothing else is shown, the plaintiff is entitled to recover the contract price upon proving the defendant's violation of the contract, and his own willingness to perform." Sedgwick on Damages, 8 ed., sections 666–667.

Other authorities might be cited, but we need not further pursue the inquiry.

The appellee testified upon the trial that the time for which the appellant had employed him, or agreed to retain him in its employment, was during his life. Counsel thinks, or intimates, that this does not sustain the averment of the complaint that the employment was to be " steady and permanent," and asks if this is not a fatal variance. We do not so regard it. We think the evidence tends to prove the averments with reference to the time of employment.

Some further objection is made to instructions given and refused, but, without setting them out, it will be sufficient to state that the rulings upon these instructions is in consonance with our views of the law as declared in other portions of this opinion.

Judgment affirmed.

Filed December 14, 1892; petition for a rehearing overruled February 18, 1893.