## GEORGE LESSLIE vs. INTER-ISLAND STEAM NAVI-GATION COMPANY, LIMITED.

### June 13, 1904.

*Contract for Hiring.—Breach.—Damages:* A breach of a contract for
hiring, which contains no stipulation for a definite period of employment,
is not a ground for damages.

*Same.—Construction:* Where such a contract contains a stipulation
by the employer for "steady employment with chance of promotion," there
is no guaranty as to the term thereof; such a stipulation being merely a
promise which is a part of the contract so long as it continues.

*Same.—Valuable Consideration at Inception:* Where a contract for
hiring is based, at its inception, upon a valuable consideration coming from
the employe, the employer will be liable in damages to the employe upon his
refusal to carry out the same.

In Admiralty: Exceptions to Libel.

J. J. Dunne, Proctor for Libellant.
Messrs. Smith & Lewis, Proctors for Libellee.

DOLE, J. This is a libel in *personam* against the defendant,
a corporation, the grounds of which are substantially that on
the 31st of July, 1901, an agreement was entered into between
the parties, whereby the libellant was employed as second mate
on the steam-vessels of the libellee at the rate of fifty ($50.00)

dollars per month with board and lodging; and that it was agreed by the libellee, as part of the contract, that the employment of the libellant should be "steady employment with chance "of promotion;" and the libel avers that the value of the board and lodging which was to be furnished the libellant under this agreement, was thirty ($30.00) dollars a month. Under this agreement the libellant performed the duties of second mate as aforesaid upon the steam-vessel named the "Keauhou," belonging to the libellee, until September 6th, 1901, at which time he was promoted to the position of first mate on said vessel with an increase of wages to the amount of ninety ($90.00) dollars a month. He continued in that position until March 15th, 1904, at which time he was discharged from the service of the libellee, in the words of the libel, "wrongfully, unlawfully, un-"justifiably and for no reasonable cause," and was damaged by such discharge in the sum of fifty thousand ($50.000.00) dollars. The libellee excepted to the libel on the grounds that it does not appear by the libel whether the contract alleged to have been entered into between the parties was oral or written, or what were all the terms, conditions and stipulations of said alleged contract; also that the libel does not sufficiently set forth the making of a valid or any contract with definite terms and conditions whereby or wherefrom a basis for damages in the sum of fifty thousand dollars, as claimed, or for any sum whatsoever, may be found, and praying that the libel be dismissed.

The important question in this issue is whether the alleged contract is sufficiently definite to form a basis for damages in consequence of its termination by the libellee. The libellant's counsel discusses this point carefully, referring to a number of authorities. As I understand the general rule of law applicable to ordinary contracts for hiring:

"The parties may bind themselves by contract, but where they have made no contract for a stipulated time the employe may leave when he wishes and the employer may discharge when

he pleases." *Frank v. Denver & R. G. Ry. Co.,* 23 Fed. Rep., 757.

Libellant's counsel recognizes this rule and contends that it is inapplicable to this case on several grounds, one of which is that this being a contract for "steady employment with chance "of promotion" it has a definite character sufficient to form a basis for damages on account of its breach by the libellee. I find that the words "permanent employment" and "steady and "continuous employment" have been construed in similar cases by the courts and have been passed on by text writers. These several expressions are analogous to and fully cover the words "steady employment" and have no significance as to the period of the engagement, but amount merely to a stipulation for unbroken employment in distinction from occasional employment, so long as the engagement lasts.

*Elderton v. Emmens,* 4 C. B. 478; *Speeder Cycle Co. v. Teelers,* 48 N. E. (Ind.) 596; *Lord v. Goldberg,* 22 Pac. 1126; *2 Bouvier's Law Dict. (Rawles Ed.),* 657.

Neither do the words "with chance of promotion" confer any definiteness or guaranty with regard to the term of a contract; they also create a stipulation which is a part of the agreement so long as it continues.

The counsel for the libellant further refers to a recent Minnesota case, *McMullan v. Dickinson Co.,* 63 Minn. 405, as authority for the principle that a contract is not indefinite nor uncertain merely because the precise period of the engagement is not specified. The Minnesota case referred to, recites a contract in which the "employment is to continue during the time the business of said corporation shall be continued not exceeding the term and existence of said corporation;" and the Supreme Court of Minnesota declared that the duration of the term of employment was sufficiently defined, which opinion I fully agree with and should apply the principle to the case at bar if there was anything in the contract to support it, but the contract as alleged in this case is merely for steady employment at

certain rates with chance of promotion. There is no intima-
tion of any term in the minds of the contractors; as far as the
contract goes the period of employment is entirely indefinite.

Libellant's counsel has also referred in his brief to a class of
cases as authority for his contention that the contract in ques-
tion is sufficient, in which there is special consideration at the
inception of the contract. Admitting his authorities and argu-
ments that there is mutuality in this contract, that there is con-
sideration, yet it appears, so far as the allegations go, to be one
of those ordinary contracts for hiring in which the promise of
the employer is the consideration of the promise of the employe,
and vice versa; which contracts are not binding until one of the
parties has done something which he has promised to do, as for
instance, the employe performs a day's work or a week's work
according to his promise, the promise to pay him is then binding
on the employer, and such contracts are binding so long as
neither of the parties chooses to terminate them. The class of
contracts which the counsel for the libellant refers to in support
of his contention, are those in which at the inception of the
agreement one of the parties gives a valuable consideration
which the other agrees to and this makes a binding contract.
For instance, the case of *Penn. Co. v. Dolan,* 6 Ind. App. 109;
32 N. E. 802, lays down the rule which I have given above to-
wit:

"An employment for an indefinite time is an employment at
the will of the parties and so when the term of service is left
to the discretion of either party it is at the will of either."

The court goes on to say that the rule referred to has no appli-
cation where the consideration of the agreement is paid parti-
ally, at least, in advance. It appears that Dolan was in the
employ of the Pennsylvania Company as yard brakeman and
while attending to his duty was injured in his right hand and
arm, which injury, as he claimed, was caused by the negligence
of the company in permitting certain parts of the cars to be-
come out of repair. The parties came to an understanding

whereby the company agreed to pay Dolan in full settlement and satisfaction for his injury, one hundred dollars and give him a job of steady and permanent employment and pay him therefor wages equal to what he was earning when he received his injury, and required as a condition of such promise that Dolan should release the company from all liability for damages and all claims growing out of the said injury.   When Dolan's wounds were healed,—he never recovered the full use of his hands—he was employed by the company and given the duty of flagging its trains, and three months afterwards he was discharged.   The court decided that the general rule in regard to contracts for hiring did not apply to this case and said:

"Suppose, that instead of the release executed by the appellee, he had paid the appellant $500 in cash, in consideration of which the latter had agreed to employ the former as flagman in its yards during his life at the rate of $2 per day.   Could it be held that the want of mutuality would entitle the appellant to keep the $500, and after a few months of employment, and without any fault on his part, discharge him?   We think not."

In another case the employe had been engaged in a business of his own.   The employers induced him to give up his business, thereby removing him as a competitor and to go into their business as a workman. The court ruled that this case was not under the general rule as to contracts for hiring but that he having given to the employers at the inception of the contract the valuable consideration of giving up his own business, it was an agreement which could not be terminated by the employers at will.   This was the case of *Carnig v. Carr*, 167 Mass., 544. These cases characterize a class of cases which libellant's counsel cites on this point of the argument and they are all based upon a valuable consideration coming from the employe at the inception of the contract. I can see no confusion between the law of these cases and the general rule referred to.   It would be unjust for an employer to accept a valuable consideration from a man and promise him employment therefor and then to take

advantage of indefiniteness to cancel or terminate the agree-ment.

Although an engagement for life is not against public policy, in the sense that it would create involuntary servitude, yet to construe any such indefinite contract like the one before the court to be a contract for life, or for such a period as the employer should conduct the business under which the employe is engaged, would be beyond the power of the court, in that it would be an attempt to add a new covenant to it. This class of cases covers a vast number of engagements between employers and employes in all kinds of business and professions and in government service, and the adoption of any such rule as con-tended for by libellant's counsel would be a new departure in the law of such cases and would tend to develop serious friction between employers and employes, and to destroy the freedom of action both of employer and employe which now exists and which is most favorable to enterprise. These considerations are all the more clear from the fact that parties are always at liberty, if they so desire, to introduce definite stipulations as to the term of employment into their contracts.

The weight of authority on this point is overwhelming so that it may be said that this rule is fully established and the only cases which are not within it are those belonging to the class referred to above and such special contracts for services which have no similarity to the ordinary contract of hire. I will further refer to the following authorities on this rule: *The Crusader,* 6 Fed. Cas., 926; Case No. 3,456, has the fol-lowing:

"Though it (a general contract for hiring), may be valid to determine the rights and obligations of the parties while both choose to adhere to it, in its nature it is liable to be dissolved at the pleasure of either party."

And also:

"The rule seems to be well settled by the great weight of authority, that where, by the terms of a contract, whether it be

written or verbal, where the contract is one of employment, and by its terms the tenure of service cannot be determined, such contract is one at will, and may be terminated at any time, at the election of either party." *Speeder Cycle Co. v. Teeters, supra.*

"No action can be maintained for the breach of a contract to employ, unless there is some stipulation as to the length of time for which the employment shall continue." *Savannah F. & W. Ry. Co. v. Willett,* 31 So. (Fla.) 246. *Blaisdell v. Lewis,* 32 Me., 515; *DeBriar v. Minturn,* 1 Cal., 450; *Louisville & N. R. Co. v. Offutt,* 36 S. W. 181; *R. R. Co. v. Harvey,* 34 S. W. (Ky.) 1069; *Wood, Master and Servant,* 2nd Ed., Secs. 133, B 6; *14 Am. & Eng. Encl. Law,* 776, 790.

I see no possible basis for damages on the showing made by the libel and will allow the prayer of the exceptions and dismiss the same.

The libellant is allowed seven (7) days in which to amend his libel.