## GEORGE LESSLIE vs. INTER-ISLAND STEAM NAVIGATION COMPANY, LIMITED.

### September 15, 1904.

*Contract of Hiring.—Breach of.—Damages:* A person who gives up a lucrative engagement and travels 2,000 miles at the request of another to enter his employment, and engages in a contract of hiring with him, by which contract the latter, besides satisfactory wages, &c., promises steady employment with chance of promotion, has no claim for damages against the employer upon being discharged after two and a half years, during which time he received steady employment, and within about a month after his engagement was promoted with a large increase of pay.

In Admiralty: Exceptions to Amended Libel.

J. J. Dunne, Proctor for Libellant.
Messrs. Smith & Lewis, Proctors for Libellee.

DOLE, J.   A decision was recently given in this case allowing exceptions to the original libel.   The libellant has amended his libel and libellee has filed exceptions thereto on substantially the same ground as in the exceptions to the original libel.   In the original libel the libellant alleged that he was a mariner and licensed .as a skillful master of ocean steam-vessels and relied upon his wages as a mariner for his support; that he entered into an agreement with the libellee to work on his steam-vessels in the capacity of second mate at fifty dollars a month wages, and his board and lodging, which were worth thirty dollars a month; and the libellee agreed as part of the contract that his employment should be steady with chance of promotion; that he began work under such agreement August 8th, 1901, on the steam-vessel known as the "Keauhou," as second mate thereon; that on September 6th, 1901, he was promoted by the libellee to the grade of first mate on the said steam-vessel with the pay of ninety dollars a month and his board and lodging as above referred to; that he continued in said employment and in such capacity of first mate until the 15th day of March, 1904, when he was wrongfully discharged without reasonable cause, sustaining damages thereby to the amount of fifty thousand dollars.   The exceptions were allowed on the ground that the libel showed the agreement to be an ordinary contract for hiring and contained no stipulation fixing any definite period for the termination of the engagement, the rule being that in such cases the contract may be terminated at any time at the election of either party.

The amended libel alleges that previous to the engagement, libellant, in addition to the allegations as to his occupation as a mariner and skillful master of steam-vessels, was in the City of San Francisco where the wages of officers of coastwise steam-vessels were seventy-five dollars a month with board and lodging for the position of second mate, and that he had, previous to the said engagement secured an appointment as second mate upon one of the said coastwise steam-vessels at said wages and

board and lodging, but had not, at the time of said engagement, entered upon the discharge of his duties under such appointment; that he communicated to the libellee all these matters above set forth in regard to the wages of such officers in San Francisco and that he had secured such appointment as second mate on a coastwise steam-vessel but had not entered upon the discharge of his duties under the same; that the libellee requested him, notwithstanding the premises, to surrender and abandon the said appointment as second mate upon said steam-vessel and to leave San Francisco and come to Honolulu and enter the services of the libellee as a second mate according to the engagement as stated in the original libel, alleging distinctly that the libellee promised him that if he would surrender and give up the said appointment and would leave San Francisco and come to Honolulu and enter the service of the libellee as aforesaid, that the libellee would give the libellant the contract of employment above set forth, and that he assented to the same and by reason of the said agreement gave up his said appointment as second mate upon the coastwise steam-vessel and entered the service of the libellee, and thereafter performed services according to the statement above set forth as taken from the original libel.

Upon this showing the counsel for the libellee contends that the general rule as to contracts of hiring applies, there being no stipulation as to the length of service agreed upon, and that the contract is not one in which damages can be given on a suit for breach of contract on account of the discharge of the employe.

The counsel for the libellant, on the other hand, contends that the allegations above set forth in the amended libel, remove the case from the general rule and entitle the libellant to damages because of the circumstance that the libellant was induced by the promise of the libellee to give up a valuable position which he held at that time in the port of San Francisco and come to Honolulu to enter the service of the libellee, relying on

his promise of steady employment with chance of promotion. In other words, that consideration passed from the employe to the employer at the inception of the contract, in the nature of a sacrifice made by the employe for the benefit of the employer, whereby the case belongs to the class of cases referred to in the trial of the exceptions to the original libel in which were cited the cases of *Pennsylvania Co. v. Dolan,* 32 N. E. 802, and *Carnig v. Carr,* 167 Mass., 544. In these, damages were allowed by the courts because of the discharge of the employe although there was no agreement for a definite period of service, the circumstances of the first mentioned case showing that the contract was one for life, in that it was an agreement to furnish plaintiff, who had been injured in the service of defendant, steady and permanent employment and pay him the same wages that he was earning when he received his injuries in the service of the defendants, on the condition of his releasing the company from all liability for damages on account of the said injuries. The injuries of Dolan were permanent and the court ruled that it was a contract for life. In the case of *Carnig v. Carr,* the plaintiff, engaged in the same kind of business as that carried on by defendant, was induced by the latter to give up his business and enter into the service of the defendant as a skilled workman, and this being both a valuable consideration to the defendant and a sacrifice by the plaintiff, the court decided that Carnig could not afterwards be discharged by defendant without cause. There is also a case in *173 U. S. Reports, Pierce v. Tenn. Coal, Iron & Railroad Co.,* which is a case of injury to the employe and an agreement to employ him at regular wages conditioned on his discharging the company from all liability for his injury. The man was dismissed after some time had elapsed and had not recovered his ability to do full work. The court, in deciding that he had an action against the company, referred to a number of cases including the case of *Carnig v. Carr,* and said:

"An intention of the parties that, while the plaintiff abso-

lutely released the defendant from the claim, the defendant. might at its own will and pleasure cease to perform all the obligations which were the consideration of this release, finds no support in the terms of the contract, and is too unlikely to be presumed."

These references show sufficiently the class of cases which are not within the ordinary rule relating to contracts of hiring and the reasons therefor, and we reach the question whether the case before us is within this class.

The law laid down in the case of *Savannah v. Willett*, 31 So., 246, would, if followed by this court, definitely decide libellant's case to be one of an ordinary contract of hiring and not within the class of cases above referred to, which are in the nature of exceptions to such rule. Willett, a conductor of one railroad, desired an engagement as conductor on another railroad as a step toward bettering his condition, and so informed the latter company upon applying for the position. He was told by this company that he would be given employment as conductor on its road if he would report at once for duty, which he did, in the meantime resigning his former position. Before he entered upon his new duties he was informed by his new employer that he would not be retained unless he should procure a release or recommendation from his old company. Although this was a second thought on the part of the new employer and his application for employment had previously been accepted, and he had received instructions as to his course of action under such engagement and had terminated his relations with his old employer, yet the Supreme Court of Florida decided that his action for breach of contract could not be maintained for want of stipulation as to some definite period of service. This decision appears to be severe and it may be that there is an element of reasonable fair dealing due in such a case to the employe which has not as yet been recognized by the courts. Here was a man acting in absolute good faith, led on by another party to whom he gave his confidence not unreasonably, to burn his ships,—

so to speak, and irrevocably commit himself to a new engagement, which engagement was repudiated by the new employer and the employe discharged even before he had time to begin to earn wages under the new contract of employment. The court finds no remedy for this manifest wrong. It would seem that some remedy should exist for such an injury, perhaps from an action *ex delicto* rather than from one *ex contractu.* The case of *Savannah v. Willett* would be parallel to the case before the court if the libellant in the latter had been discharged upon his arrival at Honolulu before he had entered upon the duties of his new position. If that had taken place, I should feel that in some way he would be entitled to damages, for to induce a sailor holding an engagement in San Francisco worth seventy-five dollars a month with board and lodging, to cancel such engagement and come two thousand miles to Honolulu, on the promise of steady employment with chance of promotion with wages at fifty dollars a month at the start and board and lodging, and then to discharge him on his arrival at Honolulu, would unquestionably be treatment savoring of rank injustice. But as the contract with the libellant was carried out in good faith for a period of over two years and a half, and the stipulation in such agreement that he should have steady employment with chance of promotion being faithfully carried out by promotion to the position of first mate with a raise of wages from fifty to ninety dollars a month and board and lodging as before, before he had been in the service of the libellee for one month, I feel, on the theory that he was entitled to employment under his engagement with the libellee for a reasonable length of time in view of the sacrifice that he made at the inception of the contract by concelling his engagement in San Francisco and coming to Honolulu, which may be said to support a presumption of an agreement on the part of the employer for an engagement for such reasonable time as would be a substantial return for such sacrifice, that he had

nothing to complain of and has suffered no damages that the libellee is liable for on account of his discharge.

In accordance, therefore, with these conclusions, the exceptions are allowed.