HUNTINGTON v. TOLEDO, ST. L. & W. R. CO.

(Circuit Court of Appeals, Sixth Circuit. December 14, 1909.)

No. 1,931.

1. CONTRACTS (§ 245*)—CONSTRUCTION AND OPERATION—ORAL AGREEMENT COLLATERAL TO WRITTEN CONTRACT.

An action at law cannot be maintained in a federal court for breach of a parol agreement for the employment of plaintiff by defendant, alleged to have been made between them as part consideration for a release by plaintiff of a claim for damages for a personal injury, where subsequent to such alleged agreement a written contract of settlement and release was made between the parties, complete in itself and the terms of which were fully understood and carried out, but which contained no provision for plaintiff's employment.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1129, 1130; Dec. Dig. § 245.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. APPEAL AND ERROR (§ 969*)—DECISIONS REVIEWABLE--DISCRETIONARY RULINGS.**

Rulings by a federal court during a trial refusing to grant leave to plaintiff to withdraw a juror, and continue the case or to file a bill in equity to reform a contract, were discretionary, and are not reviewable by an appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 969.*]

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Action by William A. Huntington against the Toledo, St. Louis & Western Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

This suit was brought by William A. Huntington, a citizen and resident of Lucas county, Ohio, against the Toledo, St. Louis & Western Railroad Company, a corporation of Indiana, owning and operating a railroad from Toledo to St. Louis. On November 7, 1903, Huntington was in the employ of the railroad company as conductor of passenger trains, and was on that day injured through alleged neglect of the railroad company. In the petition it is alleged that in December, 1903, or January, 1904, he entered into an agreement of settlement with the company "for the damages which he had suffered by reason of receiving said injuries"; that "as a part of the terms of said settlement he was paid for loss of time"; and, further, that the company "agreed as part of the consideration of the plaintiff releasing it from the damages * * * to retain plaintiff in the service of the company, and give him employment at his regular work of a conductor or at such other work as he might be able to perform so long as the plaintiff desired to remain in the service of the company." It is averred, further, that this agreement "was partly in writing and partly verbal; * * * that in carrying out the terms of said settlement plaintiff did release the defendant from said damages and the defendant * * * did continue plaintiff in its service as a conductor until on or about the month of March or April, 1905," when the company discharged him without just cause, and refused longer to retain plaintiff in its employ or pay. Damages in a large sum are asked for breach of the agreement.

In the answer it is admitted that Huntington was in the company's employ as a conductor, that he had been injured, but it is denied that the company was in fault. It is averred in the third defense that in January, 1904, the parties entered into an agreement in writing which in substance bound the company to pay $210, and Huntington to release and discharge the company from any and all liability for his injuries. In the fourth and fifth defenses it is admitted that Huntington thereafter continued in the employ of the company until as averred he was discharged in 1905 for just cause, and the other allegations of the petition are denied.

In the reply it is admitted that Huntington signed some paper at the time of making the settlement, but it is averred that, if there is any language therein purporting to release the company upon the payment of $210, "the same was written in the paper without the knowledge or consent of this plaintiff, and through fraud practiced by the person or persons, who caused said paper to be prepared."

The case was tried before the court and a jury, and in the course of Huntington's testimony he stated that one Reifsnider, claim agent of the company, called to see him in regard to a settlement. He was then asked to state the conversation had between them. Objection was made, which resulted in the written release (set out in the opinion) being identified, and Huntington's signature to it admitted. Leave was thereupon asked and given to amend the petition by striking from it the paragraph containing the allegation that "the agreement was partly in writing and partly verbal."

Huntington was permitted against objection to testify to conversations had by him with Frazier, superintendent of the company, and also with the claim

agent, Reifsnider, concerning the settlement. He testified that Frazier said: "I will give you full time for the time you have lost and promise you a permanent position with the company as long as you wish to remain," and, further, that Reifsnider, on presenting the paper for his signature, stated that Frazier had told him substantially the same thing, whereupon he signed the paper. He then proceeded in his direct examination: "Q. What, if anything, was said by Mr. Reifsnider to you on the subject of putting the agreement in writing for your services or for employment? A. I asked him if he would put the agreement in writing and he said, 'No'; that they didn't do that, but Mr. Frazier had promised it and he had all the respect in the world for Mr. Frazier, and thought it was all right and he would live up to his part of the agreement."

Huntington having stated that he did not read the release, the following occurred in his cross-examination: "Q. Now, Mr. Huntington, didn't Mr. Reifsnider at that time read that voucher to you and didn't you remark, 'I don't see anything here relative to the arrangement of my continuing in the employ of the company which Mr. Frazier made with me,' or words to that effect? A. I think I asked the question if it was in there, and he said, 'No.' Q. Then at the time you were signing this release you knew that there was nothing about re-employment in this release? A. I supposed that there wasn't."

Reifsnider, on being called by plaintiff, testified against objection that he read over the written release to Huntington, and in other respects his testimony was about the same as Huntington's. Some other testimony of the same general character was received. When plaintiff rested, the defendant moved to strike out all the testimony of conversations had prior to or at the time of the execution of the release. The motion was overruled. Defendant thereupon formally offered the release, and offered testimony of Frazier denying making any oral agreement, also offered copies of papers including the by-laws of the company.

At the close of all the evidence, the company renewed its motion to exclude the evidence offered by Huntington, and also moved to exclude all the evidence. These motions were overruled, but a verdict was on motion directed for defendant. Thereupon plaintiff's counsel moved that a juror be withdrawn and the cause continued, and that plaintiff be "permitted to file a bill on the equity side of this court to reform this contract," which motion was overruled. The cause is pending here upon proceedings in error.

C. A. Thatcher, for plaintiff in error.
C. A. Schmettau, for defendant in error.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). The theory of recovery in this case is that plaintiff in error is entitled to maintain an action at law for breach of an oral agreement of settlement, which was made shortly prior to the execution of a written agreement upon the same subject. As pointed out in the statement, the oral agreement purports to embody the settlement of a claim of plaintiff in error for injuries received by him through alleged negligence of the railroad company. It is to be observed, however, that the action is not to recover for such injuries, but is to recover upon the agreement itself. The case therefore differs from a class of actions at law in which recovery has been allowed upon the original liability or obligation, as against a defense of settlement which under proper averment is shown to have been obtained through fraud. Wagner v. National Life Ins. Co., 90 Fed. 395, 33 C. C. A. 121. When recovery is founded on the alleged agreement of settlement, and the

testimony offered discloses the existence of an agreement in writing upon the subject of the very settlement in question—indeed, the written contract pleaded as a defense—a different question arises.

We are thus brought to a consideration of the written agreement, and of the question whether secondary evidence is admissible in the present action to prove that the writing does not contain the whole agreement. The instrument is as follows:

"Toledo, St. Louis & Western Railroad Company.

"To W. A. Huntington, Dr.

"1904. January 30th, $210.00

"In consideration of two hundred and ten and no-100 dollars to me paid by the Toledo, St. Louis & Western Railroad Company, the receipt of which is hereby acknowledged, I hereby release, and discharge the said Toledo, St. Louis & Western Railroad Company from any and all liability for and on account of any claim I have, or may have, against said railroad company by reason of, or in any manner growing out of personal injuries and loss of time sustained by me while on duty as conductor of train No. 3, November 7th, when same was turned over and I sustained broken ribs and severe bruises on or about the 7th day of November, A. D., 1903, at Frankfort, state of Indiana, said amount having been received in full for any and all claims of any nature arising out of said accident.

"And I also hereby agree that this release shall operate as a bar to any and every suit at law or otherwise, which I or my heirs, executors, administrators, or personal representatives otherwise might or could sustain by reason of the claim aforesaid. And I hereby certify that the foregoing receipt and release have been read to me, and that I am fully satisfied therewith.

"W. A. Huntington.

"Witness, C. S. Reifsnider, special agent. * * * Approved, Jas. L. Frazier. Approvel for payment. T. P. Shonts, president. Received, February 25, 1904, of the Toledo, St. Louis & Western R. R. Co., two hundred ten and 00-100 dollars, in full of the above account.    W. A. Huntington."

It is manifest that this instrument is not a mere receipt. It is contractual in form and substance. On its face it is explicit and apparently complete. Its language is in no particular suggestive of omission. Indeed, it required the offer of oral testimony to disclose any idea of omission. This related to the disputed promise of employment. But, as pointed out in the statement, Huntington was conscious of that omission when he signed the agreement.

It is claimed in argument that evidence of a promise to employ only affects and was intended only to affect the consideration mentioned in the agreement, and that, like the admission of payment or amount expressed in any ordinary receipt or deed, it may be explained by parol evidence. But the difficulty of applying the rule thus suggested to the present instrument is that, under the testimony offered, it would in terms introduce into the agreement covenants creating (aside from any question under the statute of frauds) new and important legal relations between the parties on the very subject of settlement contained in the written agreement. It would fasten a continuing covenant on the company to employ Huntington and pay him wages so long as he might choose to remain, and, of course, would invest him with a corresponding right so to remain. It therefore needs but to be stated that such testimony would in effect plainly add to the written contract and change it materially as a whole, and so result in permitting a contract to be reformed in a proceeding at law.

In The Cayuga, 59 Fed. 483, 485, 8 C. C. A. 188, the right to explain or contradict an instrument kindred in character to the present one was fully considered by this court and denied. After recognizing the settled law that so much of "an instrument as is in the nature of an acknowledgment of receipt" may as a general rule be explained and contradicted by parol evidence, Judge Severens said:

"But this instrument contained more than a mere receipt. It stated that, in consideration thereof, the owners of the Manitowoc released and forever discharged the Cayuga and her owners from all claims whatsoever on account of the injury resulting from the collision, except the claim made by the owners for the loss of the use of the barge Manitowoc. It was a release, under seal, of all claims resulting from the collision except the one saved, namely, that for the value of the use of the vessel during the time she was disabled. This agreement for release was in the nature of a contract, and could no more be disputed or controlled by parol evidence than any other instrument in writing witnessing an agreement of parties."

To the same effect are: Bofinger v. Tuyes, 120 U. S. 198, 205, 7 Sup. Ct. 529, 30 L. Ed. 649; Green v. Chicago & N. W. Ry. Co., 92 Fed. 873, 877, 35 C. C. A. 68; Jackson v. Ely, Executor, 57 Ohio St. 450, 458, 49 N. E. 792; Cummings v. Baars, 36 Minn. 350, 353, 31 N. W. 449; Baum v. Lynn, 72 Miss. 932, 935, 18 South. 428, 30 L. R. A. 441; St. Louis & F. Co. v. Dearborn, 60 Fed. 880, 882, 9 C. C. A. 286; Goss v. Ellison, 136 Mass. 503; Goodwin v. Goodwin, 59 N. H. 548, 550; Rapid Transfer Ry. Co. v. Smith, 98 Tex. 553, 555, 86 S. W. 322. And in Perry v. O'Neil & Co., 78 Ohio St. 200, 85 N. E. 41, where the petition was to recover for personal injuries and the answer set up a release, the judgment of the Circuit Court reversing the trial court for refusal to charge that the release was a bar to recovery for personal injuries in terms therein recited was affirmed, on the ground that the release was not void, and, if voidable, would have to be set aside by proper proceedings before an action for the tort would lie.

The following cases involved actions based upon breach of alleged oral agreements of employment, where written releases for injuries had been given and offers of oral testimony were rejected: Myron v. Union Railroad Co., 19 R. I. 125, 32 Atl. 165; Milich v. Armour, 60 Kan. 229, 234, 56 Pac. 1; White v. Railroad, 110 N. C. 456, 460, 15 S. E. 197; Williams v. K. C., S. B. Ry. Co., 85 Mo. App. 103, 108; Jessup v. C. & N. W. Ry. Co., 99 Iowa, 189, 192, 68 N. W. 673; Jackowski v. Illinois Steel Co., 103 Wis. 448, 453, 79 N. W. 757.

All the foregoing decisions concern releases which contained provisions of a contractual nature; and the controlling principles of those decisions touching the introduction of secondary evidence are the same as those that forbid the admission of parol evidence to add to or alter or vary written contracts of the ordinary type. The decisions opposed to these, and relied on by plaintiff in error (Pennsylvania Co. v. Dolan, 6 Ind. App. 109, 32 N. E. 802, 51 Am. St. Rep. 289; Usher v. N. Y. C. R. R. Co., 76 App. Div. 422, 78 N. Y. Supp. 508; Galvin v. Boston Elevated Railway, 180 Mass. 587, 62 N. E. 961), are, we think, exceptional, and not in accord with the weight of authority.

Hence the present case must be governed by the familiar rule that conversations or negotiations which result in the execution of a written contract complete on its face are regarded as merged in that instrument. As illustrative of the rule, we may allude to language employed by Mr. Chief Justice Fuller in Seitz v. Brewers' Refrigerating Co., 141 U. S. 510, 517, 12 Sup. Ct. 46, 35 L. Ed. 837, when passing upon an alleged error in directing a verdict and so rejecting among other things evidence of an oral agreement claimed to have been made prior to or contemporaneously with the written contract. He said:

" * * * when the writing itself upon its face is couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing."

The rule was also aptly illustrated by Mr. Justice Day, when, as judge of this court, he announced the opinion in Ferguson Contracting Co. v. Manhattan Trust Co., 118 Fed. 791, 795, 55 C. C. A. 529.

The denial of the motion of plaintiff in error to withdraw a juror and continue the case, and grant leave to file a bill on the equity side of the court to reform the contract, is not open to review. The ruling was made in the progress of the trial, and was plainly within the discretion of the court. We hardly need say that the rights of plaintiff in error to have the instrument reformed in equity have not been considered.

The judgment must be affirmed; and it is so ordered.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes