Albert Jones, Appellee, v. Stoneware Pipe Company,
Appellant.

Opinion filed September 6, 1934.

GREEN & VERLIE, for appellant; KARL KING HOAGLAND, of counsel.

WM. P. BOYNTON, for appellee.

MR. PRESIDING JUSTICE EDWARDS delivered the opinion of the court.

About the year 1884, plaintiff, who is appellee, became employed by defendant, the appellant herein, the latter being engaged in the manufacture and sale of vitrified tile and pipe.

About 1893, plaintiff, while so employed, sustained an injury resulting in the loss of one hand just above the wrist. Later, on December 24, 1895, the parties entered into a written contract, by the terms of which it was provided that in consideration of the release by plaintiff of any claim for damages which he had, or might have, against defendant because of such injury, the latter would give him continuous employment so long as he desired it and was able to properly perform the duties thereof, at the rate of not less than $2.50 per day of 10 hours each, same to be paid for the time plaintiff should be actually employed as heretofore, plaintiff to perform his duties in a good and proper manner, and to be at all times sober and industrious; to hold his employment so long as he desired and was able to perform his proper duties; defendant not to have any right to discharge him, or dispense with his services, except as above stated.

Then followed a provision that if, during the first 10 years after the execution of the contract, defendant should become insolvent, make an assignment for the benefit of creditors, or shut down the plant for an indefinite term, the plaintiff should be entitled to the sum of $450 per year for each then unexpired year of such 10-year term; after which time plaintiff should only have the right of continuous employment at the rate of $2.50 per day.

Plaintiff thereupon re-entered the employ of defendant, and so continued until 1931, when, because of the general industrial depression, defendant ceased its production of tile and pipe, and only continued selling same, both the stock which it had on hand, of a considerable quantity, and some 20 cars of pipe, of the size of 6 inches or less, which it purchased from competitors for resale to its customers. It laid off all its employees, including plaintiff, with the exception of a bookkeeper, a stableman and two watchmen, whose duties will be hereafter discussed.

Plaintiff brought suit upon the contract to recover for 116 weeks' services, at $2.50 per day. There was a verdict in his favor and judgment for $1,740, from which defendant has appealed.

Four principal grounds are assigned by defendant for a reversal of the judgment, the fourth one of which is that plaintiff was under obligation of seeking other employment in order to mitigate the damages against the defendant, and that the record shows he made no effort to find employment elsewhere. This is true. However, the law is that what plaintiff might have earned by working for others, could have been claimed by defendant, only as a set-off, and the burden of proving what he earned, or might have earned, is upon the defendant, as held by this court in *School Directors v. Orr*, 88 Ill. App. 648; *School District No. 4 v. Stilley*, 36 Ill. App. 133; *Brown v. Board of Education*, 29 Ill. App. 572; *School Directors v. Crews*, 23 Ill. App. 367; as ruled by the Appellate Court for the First District in *Fisher v. Massillon Iron & Steel Co.*, 209 Ill. App. 616; and as decided in *Pennsylvania Co. v. Dolan*, 6 Ind. App. 109, 32 N. E. 802. There is nothing to this contention.

It is also urged, secondly, that under this particular contract, the parties did not contemplate that the plaintiff should have any rights in the event of a general shut-down, after the expiration of 10 years following

the execution of the agreement. We do not think this is available to defendant as a ground of reversal, upon the record as made in this case.

The trial court, at the instance of defendant, gave the only instruction which it tendered, and which, in substance, was that if the jury believed the defendant's plant was shut down for an indefinite period, by reason of outside causes, and not for the purpose of making necessary repairs, and remained closed due to such outside causes, and that since the date of closing defendant had no work which plaintiff was able to perform, then the jury should find for the defendant.

It will be observed that the instruction required the jury to find that since the date of closing, defendant had no work which plaintiff was able to perform, in order to absolve defendant from liability, which of course means that if it had such work, then defendant was bound to give it to the plaintiff. The instruction was therefore inconsistent with defendant's second contention, for which reason it is not available as a defense upon review, as a party cannot, upon appeal, seek to avoid liability upon a theory inconsistent with instructions which such party caused to be given upon the trial; as decided in *Shields v. J. H. Dole Co.,* 168 Ill. App. 362.

There is another reason why the contention is not timely. A theory of defense, to be interposed upon appeal, must first be embodied in instructions which the party tenders in the trial court, otherwise it is not available. *Mystic Workers of the World v. Troutman,* 113 Ill. App. 84. No such theory was presented by defendant's instruction. For these reasons, in our opinion, the defendant is precluded from urging such defense, upon review.

The contract in question was based upon the release, by plaintiff, of his claim for damages, hence was grounded upon a valid and sufficient consideration.

Such a contract for employment, so long as the employee desires it, and is able to perform the proper duties, as provided by the instant contract, is one in the nature of permanent employment.

Defendant insists that the rule of law governing in such cases is that the employer is only required to furnish employment so long as he has work which the employee is willing and able to perform. With this contention we are in accord. The rule, as claimed, is supported by reason and common sense, and is sustained by the weight of authority. *Carnig v. Carr,* 167 Mass. 544, 46 N. E. 117; *Pennsylvania Co. v. Dolan,* 6 Ind. App. 109, 32 N. E. 802; *Jackson v. Illinois Cent. R. Co.,* 76 Miss. 607, 24 So. 874; *Rape v. Mobile & Ohio R. Co.,* 136 Miss. 38, 100 So. 585; *Perry v. New England Casualty Co.,* 78 N. H. 346, 100 Atl. 605.

Defendant further urges that such being the rule, there was no evidence proving that during the time in question defendant had work which the plaintiff could perform.

A consideration of this contention requires an analysis of the proof. Plaintiff testified that after he returned to work, following the execution of the contract, he worked in a supervisory capacity in the production of pipe, stating: "I worked all over the plant; made pipes, junctions and fittings; sometimes I worked in the kilns where they burn the tile, and when they were short of men, I would go in and help them out all I could. I sometimes helped to load cars." He further testified: "In the past 20 years I have sometimes assisted in loading and unloading pipe. I could handle up to the ten inch tile alone. I think I could have unloaded the tile which they had been shipping in there to supply their customers." None of this testimony is disputed, and from which it appears that while plaintiff's service was largely supervisory in its nature, it was, in addition, one of general utility, per-

forming, as occasion required, any work incident to the operation of the plant which he was able to do.

The concern did not shut down completely. It ceased production, but still continued its sales service, disposing of the large stock which it had on hand when production terminated, and in addition purchased from competitors some 20 cars of tile, practically all of the size of 6 inches or less, which it resold to its customers. For the maintenance and limited operation of its plant during such time, and for such services, it employed four men,—a bookkeeper, a stableman who cared for the horses and mules and did other work about the yards, and two watchmen who were charged with keeping out trespassers, preventing fires by means of the use of small extinguishers, to be inverted and held in one hand while the hose attached thereto should be operated by the other, and in addition they were required to help unload the tile which was shipped in, pile same in the yard and assist in loading when a sale was made.

That all of these were employments incident to the limited operation of the plant, and were of the character that plaintiff could have been required by the defendant to perform if he were able to do so, seems clear; hence the converse is necessarily true, that plaintiff, under his contract, would have been entitled to discharge such duties, if he desired, and had the ability necessary therefor.

The contract provided that plaintiff should retain his position with defendant "so long as such employment is desired by him and he is able to perform his proper duties." The declaration alleges that plaintiff was able to properly perform such services, proof of which was an integral and essential part of plaintiff's case, and he had the burden of establishing same by the greater weight of the evidence. 39 Corpus Juris, p. 101, sec. 119.

Whether plaintiff had the ability to perform any of the duties thus required, during such period, was a question of fact. There is no evidence tending to show that he could, or could not, have cared for the horses and mules under the circumstances; nor whether, at his age and condition of health, he could have evicted a trespasser from the premises. Neither does it appear that he could, or could not, with the stump of his arm, have grasped the fire extinguisher and held it while he operated the hose with his one hand. There is therefore no basis in the evidence for a recovery predicated upon such services.

As to the work of loading and unloading tile, the situation is different. Plaintiff testified, and is not contradicted, that he could have done so; in fact had done so in the past. The proof shows there were two methods of unloading, one by skidding the tile down a chute, and the other by running wheelbarrows into the car, loading with tile and then running the barrows to the ground, where the tile was placed in piles. During the period in question, the latter method was used. However, if the plaintiff could unload by either described method, as he testified he had theretofore done, and same was a reasonable way of performing the work, we think he had the right of such services. Whether such was the case, was a question of fact, and the jury's finding thereon we would not be warranted in disturbing. However, there is no proof of how many days or hours were required to unload the 20 cars of tile. Obviously it did not take 116 weeks, the period of time for which the jury allowed plaintiff $1,740, or $2.50 per day for each day of such time.

It is thus manifest that the jury's award, upon the record as made, was not warranted by the proof, for which reason the judgment is reversed, and the cause is remanded.

*Reversed and remanded.*