## Frances J. Shields, Administratrix, Appellee, v. J. H. Dole Company, Appellant.

### Gen. No. 5565.

1. LANDLORD AND TENANT—*when former liable for defective condition resulting in personal injury.* A landlord who knows or who by the exercise of ordinary care ought to have known of a dangerous condition at the time either of a first or second letting to a tenant is liable to a person injured upon the premises demised by reason of such dangerous condition.

2. INSTRUCTIONS—*what estops theory of defense.* A party cannot upon appeal seek to avoid liability upon a theory inconsistent with instructions which he caused to be given upon the trial.

3. INSTRUCTIONS—*when inaccuracy in death case ground for reversal.* In such a case the instructions should limit the damages to be awarded to the pecuniary loss, and a failure so to do is ground for reversal.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Henry county; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in this court at the October term, 1911. Reversed and remanded. Opinion filed March 13, 1912.

LEMAN & RIGBY and JAY L. SPAULDING, for appellant.

JOHN T. CUMMINGS and ANDERSON & ANDREWS, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

Wilbur Barrett, appellee's intestate, was killed in a grain elevator at Kewanee, in Henry county, on September 12, 1907, and this suit was brought by Frances J. Shields, his administratrix, to recover the pecuniary loss suffered by his next of kin from his death. The elevator in which the accident occurred was owned by J. H. Dole Company, appellant here,

and operated under a lease by Samuel W. McSpadden, a co-defendant. Barrett was an employe of McSpadden at the time of his death, and was killed by the fall of a partition between bins No. 2 and 4 in the elevator. The Chicago, Burlington & Quincy Railroad Company was originally a party defendant, but at a later stage of the proceedings the suit was dismissed as to it. The first trial was discontinued because of illness of counsel. At a second trial appellee had a verdict which the trial court set aside. At the close of plaintiff's evidence on the third trial plaintiff obtained leave to file two additional counts and did so, and thereupon defendant, J. H. Dole Company, pleaded the general issue and the Statute of Limitations to said additional counts, and a demurrer to the latter plea was sustained. There was other pleading which need not be stated here. At the third trial there was a verdict for plaintiff against both defendants in the sum of $6,000. Motions for a new trial and in arrest of judgment were made and denied, judgment was entered on the verdict, and the defendant, J. H. Dole Company, appeals to this court.

The elevator in which this accident occurred was a frame building, in which were 21 bins, each about 10 by 10 by 10 feet arranged in pairs, running lengthwise of the building, one on each side of a central partition which also ran lengthwise of the building. This central partition was covered by a sidewalk from 3½ to 4 feet wide, near the roof. Bins 2 and 4 were opposite each other, separated by the partition mentioned. The evidence seems to show that on the 12th of September, 1907, there was an extraordinary quantity of grain in the elevator and that these two bins were completely filled with shelled corn, which was piled up above the sides of the bins to the shingle roof and was about 3 feet deep over the sidewalk. Bin 4 was being unloaded into a railroad freight car, standing on a track alongside the elevator. After

bin 4 was partly emptied, James Close, foreman of the elevator, told Barrett to finish cleaning out the bin, and, for that purpose, Barrett went down into the bin to shovel the corn through a hole in the bottom thereof. While bin 4 was thus emptied, bin 2 on the other side of the partition remained full of corn, and, the counter-balancing weight of corn having been removed from bin 4, the weight of the corn in bin 2 caused the partition between the two bins to be pushed over on Barrett and he was killed. Appellee contends that the falling of the partition was due to some weakness in the construction of the elevator or because it was decayed and out of repair when leased, or that appellant should be held liable as the one actually operating the building, or so associated in its operation as to be responsible for this death, so that on some one or more of these grounds, appellant, the owner of the building and lessor of McSpadden, should be held liable. Just before Barrett's death, the foreman had been engaged in shoveling out bin 4 but had been called away to attend to other matters about the elevator, and ordered Barrett to finish the work in that bin. Barrett had been employed a few months by McSpadden as a driver, and also did general work about the elevator, and had shoveled grain from various bins into cars, but whether from this particular bin was not clear from the evidence.

As before stated, this elevator was owned by J. H. Dole Company and was under lease to McSpadden at the time of the accident. The lease, which was in writing, required the lessee to keep the premises in repair, and also contained provisions that the lessor might enter at any time and inspect and make repairs. There was evidence that the president of appellant had occasionally visited the building and suggested repairs to the tenant. Appellant was in the grain business in Chicago, and the lease required the lessee

to ship all his grain to appellant and gave appellant a commission on any grain he might ship to any other party or might sell locally in Kewanee. The commission appellant would thus obtain upon the grain was declared in the lease to be a part of the rent. It also gave the lessor the right to put out the lessee at any time for any reason satisfactory to itself. It is clear under numerous Illinois cases including West Chicago Masonic Ass'n v. Cohn, 192 Ill. 210, and Foley v. Everett, 132 Ill. App. 438; 142 Ill. App. 250, that in the case of an absolute lease, the liability of the lessor for damages occurring from the subsequent defective condition of the building depends upon whether the building was in a defective condition at the time the lease was executed and the premises surrendered to the tenant, and also upon whether or not the lessor knew thereof, or, by the exercise of due care at that time, would have known thereof. If the premises were then defective and the lessor knew of it or should have known it, he is liable for a subsequent injury, though not in possession. If the premises were not then dangerous, or if he did not know thereof, and, by the exercise of due care at the time the lease was made, would not have known thereof, then he is not liable, but the liability, if any, is that of the tenant. Appellant contends that its liability must be measured by the condition of things in the elevator at the time the building was first leased to McSpadden, which was more than a year before the accident. We think this incorrect, under the authority of Borman v. Sandgren, 37 Ill. App. 160; Donk Bros. v. Leavitt, 109 Ill. App. 385; and Ingwersen v. Rankin, 47 N. J. L. 18. Besides appellant is estopped from taking that position here because of several instructions which were given at its request, in which the time when the liability was to be measured is fixed at the date of the second lease, which was July, 1907. The evidence leaves it doubtful whether the defect which caused

the partition to fall existed at the time of the execution of the second lease, and, if so, whether or not appellant ought to have known thereof, or whether, in fact, the falling of the partition was caused solely by the manner in which the tenant handled the grain, leaving one side of the partition overloaded and the other side empty.

Appellee was the mother of the deceased and was living with a daughter in Kewanee at the time of his death. Her intestate was twenty-four years old, was unmarried and was not living with his mother and sister at the time of his death. The evidence tended to show that he was earning, at the time of his death, not to exceed $12 per week and that he contributed at times to the support of his mother and sister, but not to exceed $200 per year for the mother and not to exceed $100 per year for the sister. There is no evidence to show that either mother or sister were dependent upon Barrett, nor how many years he had been so contributing to their support. Under the evidence it is a serious question whether the mother and sister of decedent were so dependent upon him as to justify so large a verdict.

In this condition of the record, instruction No. 2 given at the request of appellee, was erroneous. It was as follows:

"If you believe from the evidence that the partition involved in this suit at the time of and just before the death of Wilbur Barrett was in a state of ill repair and was weak and liable to fall, it is not necessary in order for the plaintiff to recover in this case to show that the defendants or either of them actually knew of such condition of said partition, but the evidence is sufficient upon that subject if it shows that the defendants in the exercise of due care would have known of the condition of the said partition."

This instruction imposed upon appellant the duty of inspection up to the date of the injury. It required that at the time of the injury appellant should have

been in the exercise of due care to know the condition of the partition. If the relation of appellant to these premises was only that of landlord, then as to it the question should have been whether, at the date of the last lease, the partition was in need of repair and liable to fall, and whether appellant, in the exercise of due care, would have known of that condition at that time. By this instruction the court virtually decided that appellant was operating the elevator, or was responsible for it as if it were operating it. These were questions of fact which it was not within the province of the court to decide.

Instruction No. 5, given at the request of appellee was as follows:

"You are instructed that, where the joint negligence of two persons unites in causing an injury by which another is injured, it is no defense for one of such wrongdoers to show that the other is also guilty of the same negligence."

We consider this instruction of doubtful propriety. It was a mere proposition of law, not applied to the case nor to the evidence. Its natural tendency would be to lead the jury to believe that the court was designating the defendants by the term "wrongdoers" and thereby to prejudice the jury against them. Instruction No. 7, given at the request of appellee, concerned the measure of damages, and allowed the jury to "determine what will be a fair and reasonable compensation for the loss sustained by the next of kin of the deceased." This language would include or might be thought by the jury to include injury to the feelings of the next of kin and other matters for which the law does not allow recovery. It should have been limited to the pecuniary loss. It is true that other instructions did indicate as the true measure of damages the pecuniary benefits of which the next of kin had been deprived, but in view of the large verdict, we are not able to say that this instruc-

tion did not mislead the jury. Complaint is made by appellant of some other instructions, given at the request of appellee, but in our opinion, the defects in those instructions, if any, have been cured by other given instructions.

The evidence leaves it so doubtful whether appellant is liable that we are of the opinion that the errors in instructions, above pointed out, require that this cause be tried anew.

The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*