THOMAS HOBBS v. THE BRUSH ELECTRIC LIGHT COMPANY.

*Negligence—Release of claim for damages—Promise of steady employment for indefinite time—Statute of frauds—Instrument under seal—Consideration—Evidence.*

1. A seal imports a consideration, and is *prima facie* evidence of it, but the validity of the instrument may be attacked for fraud, mistake, surprise, duress, or for a *total* want of consideration.

2. The rule created by statute[1] that sealed instruments may be impeached for want of consideration applies with equal force to *all* sealed instruments between party and party.

3. A *verbal* agreement, based upon a good consideration, to furnish steady employment to a discharged employé for no *definite* time, is valid for one year at least.

4. Taking a discharged employé back into service at fixed wages, with a promise of steady employment, is a sufficient consideration for the release by the employé of a claim for damages for injuries received through the negligence of the employer prior to such discharge ; and if he is afterwards discharged without cause his remedy is upon said agreement.

Error to Wayne. (Reilly, J.) Argued June 7, 1889. Decided June 28, 1889.

Case for injuries alleged to have been received through the

[1] How. Stat. § 7520.—" In any *action* upon a sealed instrument, and where a *set-off* is founded on any sealed instrument, the seal thereof shall be only presumptive evidence of a sufficient consideration, which may be rebutted in the same manner and to the same extent. as if such instrument were not sealed." *Green v. Langdon,* 28 Mich. 226.

negligence of the defendant. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Henry M. Cheever* and *Montgomery & Jeffries,* for appellant.

*Marston, Cowles & Jerome,* for defendant.

CHAMPLIN, J. The plaintiff was employed by the defendant to trim its lamps, and, while so employed, fell from a pole to the ground, a distance of 25 feet, and was severely injured.

He alleges that the accident was caused by the negligence of the company in not providing a proper guard to sustain him while in the act of cleaning the lamp. This guard was a loop of wire, which was suspended from the top of the lamp frame, and passed around under his arms, and in performing his work this wire was required to sustain nearly the weight of his body. The defect claimed was that this wire was too light, and lacked the requisite strength. He had been in the employment of the company several months in the capacity of trimmer, and had trimmed this lamp, and knew of the unsafe nature and condition of this guard for a long time. It was his duty, under his employment, when he observed any defects in the appliances or apparatus in use by the company, to notify it promptly of such defect. He notified the head trimmer of the unsafe size of this wire guard, and he said he would have it attended to, but it was not done. A few days before the accident he reported it to one of the line men, but nothing was done.

After his injury, which occurred on the seventh day of January, he was taken to the hospital, where he stayed until he recovered sufficiently to walk out, about the middle of March. He went to work again for the company about the twentieth of March, and was employed in the shop for a short time, repairing lamps and cleaning them, when he was set at work again trimming lamps. While he was at the hospital

the company continued to pay to his wife the same wages he received while at work. They also paid his hospital bills.

The wages and bills so paid amounted to $162.57. After seven or eight days from his injury he knew that his wages were being paid to his wife. He continued to work until the latter part of August, when he took a day off for recreation. When he appeared the next day at the office the superintendent asked him if he had come to quit. He replied "I am here," and he directed Mr. Welton to pay him off, and he did so. He then went and saw Mr. Leggett, the president of the company, and he advised him to go back and talk with the superintendent. After some talk the superintendent told him to come again on Monday. At this time he told plaintiff if he would sign an agreement to clear the company from all responsibility he would give him steady employment as trimmer. He said he paid him his wages while he was sick, and his hospital expenses, and plaintiff told him if he would give him steady work he would sign it.

A release of all actions, causes of action, and damages was then prepared by the company, and plaintiff signed it, because the superintendent said he would give him steady employment at the same wages that he had been having, which was fifteen shillings a day. He worked until the twentieth of October, and was entitled to receive $24.38.

It was the practice of the company to inclose the wages due their employés in an envelope, with the amount marked on the outside, and at the time the envelope was delivered the employé was required to sign a receipt for the amount. The envelope given to the plaintiff was marked $24.38, but on opening it he found it contained $20.38, and a doctor's bill for four dollars. A dispute thereupon arose whether this bill of expense was included in the amount stated in the release, and the company discharged the plaintiff then and there. The plaintiff then brought this action to recover his damages for his personal injuries.

Upon the trial the facts appeared as stated above. The release, bearing date the tenth day of September, 1888, signed and sealed by the plaintiff, was read in evidence, and the court directed a verdict for the defendant on the ground that there was no testimony showing that the release was obtained by fraud, duress, or surprise.

We agree with the circuit court that there is no evidence of fraud, mistake, surprise, or duress by which the release was executed and delivered. Nor is there any conflict of evidence as to the consideration. The plaintiff's testimony shows the consideration, and it was a good and sufficient one to support the release. The seal imports a consideration, and is *prima facie* evidence of it; but the validity of the instrument may be attacked for fraud, mistake, surprise, duress, or total want of consideration. The rule created by statute that sealed instruments may be impeached for want of consideration applies with equal force to all sealed instruments between party and party. Now, it is claimed by counsel for the plaintiff that there was a total want of consideration, because the payment of plaintiff's wages and hospital expenses by the company was entirely voluntary, and created no debt or obligation against the plaintiff which he was in any wise bound to repay, and the promise to furnish steady employment was void by the statute of frauds because not in writing. It will be noticed that the agreement to furnish steady employment did not specify any time during which it should be furnished, and a verbal promise, based upon a good consideration, would be valid for one year at least.

Grant that the payment of wages and hospital expenses was, in the first instance, voluntary, and could not have been recovered by action, yet there was a consideration for the release in taking the plaintiff, who had been discharged, back into the employment of the company at fixed wages and with the promise of steady employment.

This agreement was legal and binding, and, if the plaintiff

was discharged without cause, as he appears upon this record to have been, his remedy is upon the agreement. In order to obtain employment by this company he agreed to and did release his cause of action for damages, and the company, in consideration of such release, did take him again into its service, and promise him steady employment at the wages previously paid to him. The settlement appears to have been satisfactory to both parties, and nothing is shown to impeach its validity.

The judgment is affirmed.

The other Justices concurred.