LOUISA CLARK v. CLARENCE J. PHELPS.

*Fraudulent conveyances—Evidence—Practice in Supreme Court.*

It is not the province of this Court to weigh the evidence, and from it arrive at a conclusion upon the facts different than that reached by the jury; but there must be some evidence to support the verdict, or it must be set aside as unwarranted under the facts shown.

So *held*, where the issue involved was fraud on the part of a wife in taking a bill of sale of a horse in her own name to defraud her husband's creditors, as alleged, and the Court find that there was no evidence warranting the submission of the question of fraud to the jury.

Error to Ogemaw. (Simpson, J.) Argued June 12, 1889. Decided October 18, 1889.

Replevin. Plaintiff brings error. Reversed. The facts, and points of counsel *passed* upon by the Court, are stated in the opinion.

*F. L. Snodgrass*, for appellant.

*Nelson Sharpe* (*Markey & Hall*, of counsel), for defendant.

LONG, J. This action of replevin was brought in justice's court, where defendant had judgment.

Plaintiff appealed to the circuit court of Ogemaw county, where the case was tried before a jury, and defendant again prevailed. Plaintiff brings the case to this Court by writ of error.

The defendant is the sheriff of Ogemaw county. The property in controversy is a horse, which the defendant, as sheriff of the county, took on a writ of attachment against Dayton D. Clark, the husband of plaintiff. The horse was taken from the possession of the defendant under the writ of replevin.

Plaintiff claims that the court erred in permitting certain questions to be asked and answered on the cross-examination of the plaintiff and of her husband, Dayton D. Clark, and also in refusing to give certain of plaintiff's requests in charge to the jury.

The theory of the plaintiff was that, about September 11, 1887, she purchased the horse of one Charles Woods, at West Branch, paid $150 therefor, and took a bill of sale from Woods to herself. Upon a cross-examination of some of the plaintiff's witnesses, however, it appeared that the husband of plaintiff made the arrangement for the purchase for the plaintiff, as it is claimed, with one Charles A. Hakes, acting

for Mr. Woods, and paid the money to Hakes; that shortly afterwards Mr. Clark asked Hakes to have a bill of sale made out for the horse, running from Woods to plaintiff; and that some two weeks after the purchase the bill of sale was procured to be drawn by a lawyer, signed by Mr. Woods, and delivered by Mr. Hakes to Dayton D. Clark.

At the time the purchase was made only a portion of the money was paid by Mr. Clark, and the balance was paid some time thereafter by Mrs. Clark.

At the time of the purchase only $90 was paid down, and the note of Mrs. Clark, signed in her name by her husband, with two sureties, taken for the balance. Mr. Clark paid the $90, and afterwards paid $20 on the note, Mrs. Clark paying the balance, though it is claimed that all the money came from Mrs. Clark, and was money received by her from the estate of her father, and money given her by her brother.

The theory of the defendant was that this money paid down for the horse, as well as the money afterwards paid in taking up this note, was the money of Mr. Clark, and not the money of the plaintiff.

A very thorough and searching cross-examination of the plaintiff and her husband was allowed by the court. We see no error in this, as the defendant's claim on the trial was that the horse was the property of the husband, purchased by him from Mr. Woods, through Mr. Hakes, and the moneys paid therefor were the husband's moneys, the bill of sale being taken to the wife for the purpose of covering up the real transaction, and for the purpose of defrauding the creditors of Dayton D. Clark, of whom Mr. Morton was one.

The whole case was submitted to the jury upon the theory of each of the parties by the trial court, the court directing the jury that, if they found the horse was paid for by the money of Mrs. Clark, and she bought and paid for it in good faith, then their verdict must be for the plaintiff; but if

they found that she did not buy it in good faith, and that the title to the horse was put in her name, sold or transferred to her by Mr. Clark, in order to defraud Mr. Morton, and when the sheriff seized it Mrs. Clark had no interest in it except to hold it at that time as hers, as a fraud upon Mr. Morton,—in that case the sale was void, and Mr. Clark owned the horse as much as if it had not gone into her name, and their verdict should be for the defendant for the amount of Mr. Morton's claim.

As an abstract proposition, this part of the charge is not erroneous. The record, however, purports to contain all the evidence, and, from a careful reading of it, we find no evidence that would warrant the court in submitting the question of fraud to the jury, and no evidence which would warrant a verdict in favor of the defendant.

Mr. Clark and his wife both testified that Mrs. Clark received from her brother $220, which money the brother had received from the settlement of his father's estate,—$20 being paid to her in July, 1887, and $200 in August, following; that Mrs. Clark let her husband have $150 of this money to purchase this identical horse. Instead of paying the whole of the $150 given him to make the purchase, he paid $90 of it down, and gave the note of his wife for $60 for the balance of the purchase price. This fact was afterwards communicated to her. She recognized the validity of the transaction, took the bill of sale to herself, and afterwards paid the balance of the note. These facts appear upon this record undisputed.

Though the court allowed a very searching cross-examination of Mr. and Mrs. Clark as to how she became possessed of the moneys, as well as the manner of conducting the entire business of the parties, yet it nowhere appears that this money that was paid for the horse in controversy was not the identical money given by the brother of the plaintiff to her.

It is not the province of this Court to weigh the evidence, and from it arrive at a conclusion upon the facts different than that reached by the jury; but there must be some evidence to support the verdict, or it must be set aside as unwarranted under the facts shown. Here there is certainly no evidence to justify the charge, or uphold the verdict. No fraud is proved, and no evidence given tending to prove it. From a careful review of the whole case, it is apparent that the verdict and judgment cannot be upheld.

The judgment must, therefore, be set aside, with costs, and a new trial granted.

SHERWOOD, C. J., CHAMPLIN and CAMPBELL, JJ., concurred. MORSE, J., did not sit.