103 420
112 56
s112 218
112 653

103 420
117 223

103 420
f121 262

103 420
128 602

103 420
s61ᴺᵂ 550
d129 506
103 420
f152 ⁵701
152 ⁵703

WILLIAM BRIGHTON v. THE LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY.

*Release and discharge— Claim for personal injuries—Railroad companies—Contract for employment—Authority of officers —Breach—Waiver—Measure of damages.*

1. Two division superintendents of a railroad company represented the company on the final settlement of a personal injury case, and the company carried out the settlement as made by the payment of the amount agreed upon. The claimant sued the company for the breach of a contract which he alleged was made with him by said superintendents in behalf of the company at the time of said settlement, under which he was to be furnished with employment at a fixed monthly salary during his life, or during his ability and disposition to perform the duties pertaining to said employment. And it is held that

it was proper to allow the jury to find that said officers had authority to make said contract.

2. The plaintiff testified that the contract was signed by the officers who made the settlement, and his attorney testified that the contract was drawn, but that he was not sure that it was signed. The evidence tended to show that the contract was lost. And it is held that the question of whether or not the evidence established the contract was properly left to the jury.

3. The plaintiff was entitled to employment according to the terms of the contract, if made, during the period of his ability and fidelity, but, if he became incompetent, unfaithful, or disobedient, he was subject to discharge, and forfeited his rights under the contract.

4. The plaintiff was at first given employment at the agreed salary, but shortly afterwards his salary was reduced, and he accepted the same for 15 years without protest. And it is held that this was evidence of a waiver of his right to the agreed salary for the time covered by such payments, and, if unexplained, amounted in law to such waiver.

5. Where, as a part of the settlement by a railroad company of a claim for personal injuries, the company agrees to furnish the injured party employment at a given monthly salary during life, or during his ability and disposition to perform the duties of his position, the injured party is entitled to recover, for a breach of the contract, its fair and reasonable present value.

Error to Washtenaw. (Kinne, J.) Argued November 22, 1894. Decided December 28, 1894.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*C. E. Weaver* (*George C. Greene* and *O. G. Getzen-Danner,* of counsel), for appellant.

*Lehman Bros.* and *Thomas J. Navin,* for plaintiff.

HOOKER, J. On October 19, 1874, the plaintiff, at the time an employé of the defendant, was injured by reason of a collision of trains upon its railroad. The plaintiff subsequently made a claim against the defendant, through

Charles R. Miller, Esq., his attorney, for damages, and on March 24, 1875, a settlement was made between them. Counsel for the appellant state in their brief that the whole controversy grows out of a disagreement as to what the terms of the settlement were. It seems to be conceded that the defendant paid to the plaintiff the sum of $540, and that the plaintiff executed a release and discharge, of which the following is a copy:

"Name, William Brighton, Adrian, Michigan.

"For the consideration of $540, received, to my full satisfaction, of the Lake Shore & Michigan Southern Railway Company, I hereby release and discharge the said company from all claims and demands which I have, or may be entitled to have, against it, either in my own name or in that of any one else, and especially from all liability to me for loss or damages which has resulted or may result to me from injury suffered by me by reason of a collision of two construction trains between Sisson and Deerfield, having my right hand crushed and lost one finger, and injured about my side and back, which occurred on or about the 19th day of October, A. D. 1874.

"Received payment, March 24, 1875.

"[Sg.]      WILLIAM X BRIGHTON.      [L. S.]"
                       his
                      mark

The plaintiff claims that at the time of the settlement, and as part thereof, it was agreed that the plaintiff should have employment in a position paying $43.75 per month, or a better place, and that he should be so employed and paid during life, or during his ability and disposition to perform the duties of his position, and could not be discharged without cause. It was further claimed that this agreement was put in writing, signed by the officers who made the settlement for the defendant, and was delivered to the plaintiff or his attorney. The defendant denied that any such agreement or writing was executed, and claims that when presented such execution was refused, but that the plaintiff was given a place on the same terms as any other employé. The plaintiff was given the position

of target tender at Manchester, where he remained about 15 years, until the target at that point was discontinued. He was then transferred to another point, where he was employed as target tender for two years, and until that target was discontinued. He was then given work as a section hand, under one Stegmiller, commencing in February, 1891, and was discharged by direction of the road master on August 22, 1891. His wages as target tender were $43.75, until January 1, 1876, when they were reduced to $31.50, and so remained until November, 1889, when they were made $30 per month. As section hand they were $29.50 or thereabouts, depending somewhat on the amount of Sunday work done. The plaintiff did not produce the disputed writing, which he claims was left with his attorney, and cannot be found; after proof of which secondary evidence was admitted, and he was allowed to recover at the rate of $43.75 per month for the time employed, less what he had received. The jury were also permitted to allow him prospective damages upon the expectancy of life and ability to work.

The more important questions involved are:

1. Whether the court erred in refusing to direct a verdict for the defendant.
2. The measure of damages.

Counsel for the defendant assert that there was no evidence tending to prove the contract, for the reason— *First*, that those said to have made it had no authority to make it; and, *second*, that the evidence of the plaintiff and Miller is insufficient to establish it.

If there was such a writing, it was executed by the persons who adjusted the claim for damages, and was a part of that transaction. This settlement was carried out by the payment of money, and it was proper to allow the

jury to find that the officers had authority in the premises.[1]

It is sufficient to say, about the second point, that there was evidence tending to show that the disputed writing was made and delivered, and that it was lost. Miller testified that the agreement was made and writing drawn. He admitted that he was not sure that it was signed. The plaintiff said that it was signed by the officers of the company who made the settlement. There was therefore no error in leaving the question to the jury. *Dailey v. King*, 79 Mich. 568.

If this contract was made, as the jury must have found, the plaintiff was entitled to employment according to its terms during the period of his ability and fidelity, and the court so instructed the jury. He added: "If he became incompetent, unfaithful, or disobedient, he was subject to discharge, and forfeited his rights under the contract." This was correct.

Upon the subject of damages he instructed the jury as follows:

"You will bear in mind that this suit is brought to recover damages for a breach of 'an alleged contract, and that the damages which the plaintiff is entitled to recover are such as may be fairly and reasonably considered as arising from the breach of such contract, and such as may be considered to have been contemplated by the parties when such contract was made, as a probable result of the breach of the same, and the plaintiff can only recover such damages as he has actually sustained.

"During the period of his employment, if he received less than the contract price, he can now recover the difference thereof, unless he has waived such difference, and accepted the less sum in full satisfaction thereof.

"The plaintiff also claims that his contract called for

---

[1] The defendant was represented by the superintendents of two divisions of its road.

permanent employment, and he seeks in this case to recover the full value of his contract with the railroad company in this respect; this contract, as he claims, covering the entire period of his life,—that is, as far as he is able to labor. If you should find from the evidence that the contract in this regard was of the character claimed by the plaintiff, then the plaintiff is entitled to recover in this case such sum as from the evidence you may determine to be the present value of such contract. In estimating the present value of such contract, or, in other words, the damages to the plaintiff by reason of the breach of such contract, you should consider his age, his health, his ability to labor, and the probable duration of his life. These damages are not represented by a computation of $43.75 per month for a series of years called his 'expectancy;' that would be an unfair adjustment to the railroad company. The plaintiff is only entitled to such a sum as will represent fairly and reasonably the extent of his loss. He has no right to remain idle. It is his duty to labor as best he may, and his measure of damages must in part be controlled by his ability to work and earn wages and otherwise decrease his apparent damages. You should, on the other hand, consider his possible inability to find suitable employment, or to earn in such way the amount which he claims the railroad company agreed to pay him. You should also consider the fact that, in allowing the plaintiff damages for breach of this contract, he will now, at the present time, be receiving moneys which otherwise he would only obtain in the future as the same were earned, and that hence the present value of such services of the plaintiff, if now allowed and paid, must be materially less than their aggregate sum. In a word, gentlemen, you should consider all the circumstances and surroundings of the plaintiff, and therefrom, under the evidence in the case, determine the fair and reasonable present value of the alleged contract,—or, in other words, the damages which the plaintiff has sustained by reason of the breach of said contract,—and accord to the plaintiff a just compensation for the same, provided you find the plaintiff is entitled to recover."

The charge is said to be erroneous in allowing the jury to award damages for the deficiency in monthly payments and also prospective damages. It is said that the

receipt of a less sum than - $43.75 per month, without protest or claim of more, for a period of 15 years, and up to the time of his discharge, is strong evidence of acquiescence in his employment at lower wages, and for a part of the time, at least, in a less responsible and laborious place. There is no evidence upon the subject beyond the bare fact of the changes and his payment. No complaint appears to have been made. We think this was strong evidence against the execution of the contract, and, while it was not sufficient to take that question from the jury, it was a clear waiver of his right to a "better place," or to a subsequent claim of $43.75 per month for the time covered by such payments. It was not only evidence of waiver, but, unexplained, it amounted in the law to a waiver, involving, as it did, a monthly account stated, and payment. *Button v. Russell*, 55 Mich. 479; *Cobbs v. Fire Association*, 68 Id. 463; *Marthinson v. Insurance Co.*, 64 Id. 372.

We think the instruction of the court in relation to prospective damages was correct.

Other questions are raised by the assignments of error which we think it unnecessary to discuss.

We are constrained to reverse the judgment, and order a new trial.

McGRATH, C. J., LONG and GRANT, JJ., concurred. MONTGOMERY, J., did not sit.