WESTERN NEWSPAPER UNION *v.* KITCHEL.

CONTRACTS—MUTUALITY—OPTION OF BUYER—CONSIDERATION.
    A contract between defendant, a newspaper publisher, and a news agency, whereby defendant gave up a valuable contract right with a rival concern of the plaintiff and bought plaintiff's news service and miscellany plates, at a stipulated price, the contract to continue at the option

of defendant, was not void for want of mutuality, and in a suit for material furnished by plaintiff, who had breached the contract by refusing to continue the service at the contract price, defendant was entitled to recover his damages as an offset.

Error to Branch; Knowlen, J. Submitted January 31, 1918. (Docket No. 180.) Decided March 28, 1918.

Assumpsit by the Western Newspaper Union against Horace Kitchel for services rendered. Judgment for plaintiff. Defendant brings error. Reversed.

*Palmer, Palmer & Palmer*, for appellant.

*Henry C. Loveridge* and *S. T. Slawitsky*, for appellee.

MOORE, J. This case was tried before the circuit judge without a jury. His findings of fact and conclusions of law state the issues involved very clearly as follows:

"Findings of Fact: For some years prior to April 16, 1912, Mr. Kitchel, the defendant, published a daily and semi-weekly newspaper at Coldwater in this county, having a circulation of upwards of 6,000 and buying from the American Press Association daily news plates and daily news column for which he paid ten dollars and fifty cents per week. At that date and for a long time prior thereto, said American Press Association and plaintiff were competitors and rivals in the business of furnishing such service to newspapers throughout the United States. On April 16, 1912, plaintiff by its agent called upon defendant and importuned him to terminate his said service contract with the American Press Association and offered to supply him with substantially the same service for seven dollars and fifty cents per week. Defendant, reluctant to change, stated to plaintiff's agent that he feared (if he made the proposed change) that the said plaintiff and said American Press Association would unite, agree upon prices, and that in consequence de-

fendant would be called upon and required to pay higher rates than he was paying. Plaintiff's agent thereupon offered to protect defendant from the contingency in question by incorporating into the proposed contract an option to defendant in terms, viz:

" 'It is also agreed that an option be given Pub. to certain daily service at same rate T. F. and miscellany plates not to exceed former prices namely $1.00 and $1.50.'

"Defendant and plaintiff by its agent thereupon signed the proposed contract, the same including said option and plaintiff's acceptance indorsement thereon.

"This contract was forwarded to plaintiff at Chicago and was duly accepted in writing by plaintiff. The letters 'T. F.' in said option clause are an abbreviation of 'until forbidden.'

"The clause in question in terms amounted to an option in defendant to elect to continue the said service at his will. The regular price for the service which said plaintiff agreed in such contract to furnish defendant at $7.00 per week was $11.00 per week and the miscellany, etc., fixed in the contract at 50 cents per page were ordinarily charged at $1.00 and $1.50 per page.

"The contract was by its terms made to expire on May 20, 1913, but said option clause as I have said was added and incorporated before its execution.

"Service was furnished defendant by plaintiff under said contract to said May 20, 1913. On April 17, 1913, plaintiff notified defendant that it would not furnish the same after May 20, 1913, at the contract rate and announced a rate of $11.00 per week for the service which had theretofore been furnished defendant under the contract at seven dollars per week. Nothing further was done by either party nor were there any communications between them until about May 25, 1913, when defendant called upon plaintiff at its Chicago office and stated to plaintiff that he desired to continue the service according to the terms of the contract until he should order it discontinued, as provided by such contract, and he desired plaintiff to live up to said contract. Plaintiff questioned the validity of the option clause and stated that it would refer the matter to its attorney and advise

the defendant in a few days of the attorney's decision. On May 29th the plaintiff advised the defendant that the contract was voidable. Service was furnished however until June 9th, 1913, when plaintiff wired defendant 'We cannot continue daily service unless you will accept at price billed' meaning $11.00 per week. On the same day plaintiff wrote defendant to the same effect. Nothing further transpired between the parties and the service was discontinued by plaintiff. Thereupon defendant endeavored to obtain the service from the American Press Association, but was unable to do so, the latter wiring him on June 11, 1913 'objections on part of paper receiving our telegraph service will make it impossible for us to serve you.' The paper referred to in this message was the Coldwater Courier, whose contract with said American Press Association prohibited the latter from furnishing service to any other Coldwater paper.

"Defendant thereupon made up such service as he was able to with his own facilities at a weekly cost as he claims and testifies of $16.00 and claims as damages by way of recoupment against plaintiff's claim, nine dollars per week from June 9, 1913. This suit was commenced May 25, 1914.

"It is conceded that plaintiff has a valid claim against defendant of $42.81 for metal not returned to plaintiff by defendant. The plaintiff also claims for unpaid service $15.99, making its total claim against defendant $58.80, for which it asks judgment.

"Conclusions of Law: The option clause, namely, 'It is also agreed that publisher be given an option of continuing daily news service at the same rate T. F. and miscellany plates not to exceed former prices namely $1.00 and $1.50 per page,' was the exact legal equivalent of the following language, 'It is also agreed that Mr. Kitchel be given an option to continue daily news service at the same rate as long as he may desire such service.'

"Although under this clause Mr. Kitchel was under no obligation to receive this service for any definite time and was at liberty to terminate such service at any time at his will after May 20, 1913, the contract was not void for want of mutuality. A valid consideration supported this option clause, namely, defendant's

agreement to take and pay for the service from April 16 to May 20, 1913.

"'A contract may be so made as to be optional on one of the parties and obligatory on the other, or obligatory at the election of one of them.' *East Line, etc., R. Co.* v. *Scott*, 72 Tex. 70, and cases cited.

"The option contract, properly interpreted, gave Mr. Kitchel the right to exercise the option and fix a definite and reasonable period of service required of the plaintiff and thus make certain and definite that which in the absence of such exercise was so uncertain and indefinite as to be not susceptible of enforcement by an action for damages; and such right was not terminated by the notification (of April 17, 1913) of plaintiff that it would not furnish the service after May 20, 1913. Defendant in my opinion had only to then fix and declare a reasonable, definite period of continuation of the service and thereby bind plaintiff for such period, but defendant did not do so. Such right was not terminated by the refusal of plaintiff to continue such service on the occasion of defendant's presence in plaintiff's office in Chicago on May 25, 1913. He had then in my opinion only to fix and declare a reasonable, definite period and thereby bind the plaintiff for such period. But defendant did not do so. Upon the contrary he insisted upon a continuance of the service indefinitely at his will. In my opinion such right of defendant to exercise the option in the manner aforesaid continued in him until June 9, 1913, when plaintiff informed him that it would no longer furnish the service at the contract rate. In my opinion defendant had only then to fix and declare a reasonable, definite period of service and thereby bind plaintiff for that period. But defendant did not do so.

"It is my further opinion that this right of exercise of option in the manner above expressed continued in defendant up to the time of the commencement of this suit and perhaps up to the trial, but defendant at no time prior to the trial nor during the trial elected to fix any definite period of service. Upon the contrary his attitude at all times was that he was entitled to continuation of the service at the old rate indefinitely and at his will. Under such circumstances, I am of

opinion and find as a matter of law that the contract not having been rendered certain and definite by any exercise of election by defendant, is not enforceable by defendant in this suit; that he cannot recover damages against plaintiff and that plaintiff is entitled to judgment against defendant for $62.45 damages; that sum being the amount of plaintiff's claim of $58.80 with 5 per cent. interest from October 8, 1915, the day of the trial, computed to this day but without costs.

"I further find, adjudge, and determine that the claim of plaintiff, as established on the trial, was not reduced by any set-off; that this suit was one that could have lawfully been commenced in justice's court; and that therefore defendant is entitled to recover against plaintiff his costs to be taxed.

"Formal judgment therefore for said sum of $62.45 will be entered in favor of plaintiff and against defendant (but without costs) with execution to collect the same; and formal judgment will be entered in favor of defendant and against plaintiff for costs to be taxed with execution to collect the same."

The case is brought here by writ of error.

It is the claim of appellant that he should have been allowed to recover the difference between the price he was to have paid under the contract, and what it cost him to supply the service to which he claims he was entitled under the contract, amounting to upwards of $600.

It is conceded that the cases of *East Line, etc., R. Co.* v. *Scott,* 72 Tex. 70, and *Bolles* v. *Sachs,* 37 Minn. 315, sanction the conclusion of the circuit judge, but it is claimed they are against the clear weight of authority.

Counsel for appellee insist the contract is void for want of mutuality, and for want of certainty, and because it is indefinite and indeterminable. In addition to the cases already mentioned they cite, in support of their contention, *Davie* v. *Mining Co.,* 93 Mich. 491; *Jackson* v. *Sessions,* 109 Mich. 216; *Sax* v. *Railway Co.,* 129 Mich. 502; *Sullivan* v. *Railway,* 135 Mich. 673; *Isbell* v. *Carriage Co.,* 170 Mich. 304; *Fuchs*

v. *Thermometer Co.,* 178 Mich. 37; *Garlock* v. *Rubber Co.,* 192 Mich. 665, and many other cases.  Without stopping to analyze each of these cases it may be said of them that they are easily distinguishable from the case before us.

The case of *Rague* v. *Publishing Co.,* 164 N. Y. App. Div. 126, is in point.  There the plaintiff gave up the sale of a rival newspaper in consideration of the contract which was made.  The same claim was made as to the contract that is made here.  We quote from the opinion:

"The contract by its terms was not within the statute of frauds with reference to its completion within one year.  (*Kent* v. *Kent,* 62 N. Y. 560.)  It was not without consideration as the plaintiff abandoned a valuable business.  The duration of the contract was not unmeasured, as it would continue until plaintiff did an act, viz., resumed the sale of the Telegram.  (*Harrington* v. *Railway Co.,* 60 Mo. App. 223; *Carter White Lead Co.* v. *Kinlin,* 47 Neb. 409; *McMullan* v. *Dickinson Co.,* 63 Minn. 405.)  But it is urged that the contract failed in mutuality.  There was all the mutuality that the nature of defendant's offer permitted.  The plaintiff was not asked to promise but to do an act. He made renunciation of profitable employment and was continuing it.  That was exact acceptance of all that was tendered.  The plaintiff did not promise, but he did the required thing.  Mutuality does not depend on words alone.  It is unimportant that the continuance of the renunciation depends upon plaintiff's will. If a master owe, or is claimed to owe, a servant damages for personal injury, and promise him employment in consideration of a release therefor, and the release be given and the employment undertaken, there is mutuality although the servant may at his will cease working.  (*Carter White Lead Co.* v. *Kinlin, supra.*) So when permanent employment is promised upon similar consideration.  (*Pennsylvania Co.* v. *Dolan,* 6 Ind. App. 109.)  There was similar decision in *Smith* v. *Railroad Co.,* 60 Minn. 330; *East Line, etc., R. Co.* v. *Scott,* 72 Tex. 70; *McMullan* v. *Dickinson Co., supra.*  If A offer to pay B $500 upon the consideration

that the latter lay down a business, B accepts by laying it down. The case does not differ in respect to mutuality if the offer be that B relinquish the business in consideration of the payment of fixed installments while the relinquishment continues, and B acts upon it. In either case the offer upon B's compliance becomes an obligatory promise, based upon good consideration."

In *Sanford* v. *Huxford*, 32 Mich. 319, Justice CAMPBELL, speaking for the court, said in part:

"The decisions generally hold that an agreement to settle an existing suit is sustainable without reference to the merits of the controversy, unless under very peculiar circumstances. It is so held on the ground that an alteration in the position of the parties may of itself be an advantage, and may, in the absence of fraud or other controlling reason, be a sufficient consideration. In *Cook* v. *Wright*, 1 B. & S. 559, the court held that there could be no doubt whatever that the compromise of a suit was a sufficient consideration; but that the reason was not the saving of costs, but the change of position, and that in all cases where parties had so changed their position, the same rule would apply."

See *Brighton* v. *Railway Co.*, 103 Mich. 420.

In *Stearns* v. *Railway Co.*, 112 Mich. 651, plaintiff released a claim he had against the defendant as part consideration for the agreement. Justice MONTGOMERY, speaking for the court, said in part:

"It is insisted that the contract is not enforceable, because not mutual; that the plaintiff was not bound to work for any stated time for the defendant. In a case where no consideration passed for the employment, there might be force in this contention; but in this case, under the proofs, a valuable consideration was paid to the defendant for the conditional agreement which the defendant saw fit to enter into, leaving it optional with the plaintiff to continue in defendant's employ,—the engagement of the defendant resting, not upon the consideration of any promise by the plaintiff, but upon a consideration actually paid in hand at

the time of the engagement, namely, the compromise of the disputed claim. Upon this question the following cases are in point: *Pennsylvania Co.* v. *Dolan,* 6 Ind. App. 109; *Harrington* v. *Railway Co.,* 60 Mo. App. 223; *Brighton* v. *Railway Co., supra.*"

In the case before us the defendant had a valuable contract with the American Press Association. The plaintiff was a competitor and rival of this association. It desired defendant to break with the American Press Association and to take over the service of the plaintiff. The defendant was apprehensive if he did so that what has now happened might happen. To avoid that result it was agreed that if defendant would make the change and enter into the contract it should continue until he discontinued it. The defendant acceded to the proposal. He surrendered a valuable right, he changed his position. He did what he agreed to do.

The plaintiff should be held to its agreement and as it breached the agreement defendant should have been allowed his damages.

Judgment is reversed, with costs to defendant, and a new trial ordered.

OSTRANDER, C. J., and BIRD, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.