### HALL v. CITY OF DETROIT.

1. MASTER AND SERVANT—CONTRACTS—TERMINATION—RESIGNATION.
   A letter from employees to their employer stating that if action were not taken in the immediate future about certain complaints concerning violations of the conditions of their employment, they would be professionally and morally obligated to submit their resignations, did not amount to resignations which could be accepted by the employer.

2. MASTER AND SERVANT — CONTRACTS — EVIDENCE — JURY — APPEAL AND ERROR.
   The term of a contract of employment is an issue of fact to be determined by the fact finder's ascertainment of the intent of the parties from the evidence where the writings between the contracting parties do not specify the period of employment and a reviewing court will not invade the fact

REFERENCES FOR POINTS IN HEADNOTES
[1] 35 Am Jur, Master and Servant § 27.
[2] 35 Am Jur, Master and Servant § 10.

finding of the jury or remand for entry of judgment unless the factual record is so clear that reasonable minds may not disagree.

Appeal from Court of Appeals, Division 1, Lesinski, C. J., and J. H. Gillis and Beer, JJ., reversing Wayne, James L. Ryan, J. Submitted March 12, 1970. (Calendar No. 27, Docket No. 52,505.) Decided June 1, 1970.

17 Mich App 345, reversed.

Complaint by Paul George Hall, Mary Lou Lorenz Dietz, and Gerald D. Ward against the City of Detroit for breach of an employment contract. Verdict and judgment for plaintiffs. Defendant appealed to the Court of Appeals. Reversed. Plaintiffs appeal. Reversed and judgment of trial court affirmed.

*Lebenbom, Handler & Morganroth (Kratze & Greenbaum, of counsel), for plaintiffs.*

*Robert Reese,* Corporation Counsel, and *John R. McKinlay* and *David S. DeWitt,* Assistants Corporation Counsel, for defendant.

T. G. KAVANAGH, J. On June 27, 1963, the City of Detroit contracted with the United States Department of Labor to establish a program for the testing, counseling and selection of youths for occupational training. This contract was to cover a period of 15 months from the date of contracting. In furtherance of the contract, the City of Detroit hired personnel to organize and operate the program.

Plaintiff Hall received a letter from Mayor Cavanagh, dated September 20, 1963, which stated:

"At the recommendation of Dr. Alvin D. Loving, Executive Director of the Mayor's Committee, Community Action for Detroit Youth and Mr. Gerald Baysinger, Project Director, Special Youth Employment Project, I am pleased to appoint you Job Training Supervisor, effective September 23, 1963 at an annual rate of $10,500.

"I wish you every success in your new position."

Plaintiff Dietz received a similar letter appointing her counsellor at the annual rate of $10,000.

Plaintiff Ward received a similar letter appointing him Job Placement and Development Specialist at an annual rate of $10,000.

The position each plaintiff accepted was important and at salaries but slightly below that of the project director. Further, each of the plaintiffs alleged that they relinquished employment of value and security to accept their new positions—which new positions, they contended, were not of a kind such that a temporary appointment was likely to have been made.

On January 10, 1964 the three plaintiffs and another person sent a letter to Mayor Cavanagh. They alleged a gross misuse of Federal funds and a violation of their contract in various specified particulars. The letter concluded:

"We feel that if no action is taken by your office in the immediate future, we will be professionally and morally obligated to submit our resignations."

The letter was mailed by the plaintiffs on Friday, January 10, 1964 and received by the mayor the following Monday, January 13, 1964. The mayor's response was by a letter to each of the plaintiffs on January 13, 1964. The complete letter is as follows:

"In view of your letter of January 10, 1964, your services to the Special Youth Employment Project are terminated as of January 13, 1964."

Plaintiffs brought suit for the balance due for the period January 13, 1964 to September 20, 1964, asserting their contract of employment was for the term of one year.

The case was tried to a jury in Wayne County circuit court. Honorable James L. Ryan, at the end of plaintiffs' proofs, denied a motion by defendant for a directed verdict. Plaintiff Hall was awarded a verdict of $6,246; plaintiff Dietz $7,115.50; and plaintiff Ward $3,681.10, each with interest.

On May 26, 1969 in a *per curiam* opinion Division 1 reversed, with directions to enter a verdict of no cause for action holding first, that no evidence supported a finding that the contract was to extend for one full year, and, second, that the plaintiffs had resigned. They further held that the trial court as a matter of law should have granted the defendant's motion for a directed verdict.

On appeal the plaintiffs raise one issue:

Should an appellate court upset a jury verdict where there is evidence to support the verdict?

The decision of the Court of Appeals can be affirmed only if there be no evidence to support the jury's verdict (*Clark* v. *Phelps* [1889], 76 Mich 564). As a reviewing court we will not invade the fact finding of the jury or remand for entry of judgment unless the factual record is so clear that reasonable minds may not disagree. See *Cochrane* v. *Wittbold* (1960), 359 Mich 402.

Where as here the writings between contracting parties do not specify the period of employment, that term of the contract is an issue of fact to be determined by the fact finder's ascertainment of the intent of the parties from the evidence. See *Paxson*

v. *Cass County Road Commission* (1949), 325 Mich 276, wherein the Court said at p 282:

"The question of the period of employment is one of fact as to what was the intent of the parties. * * * Mere stating of the salary at an annual rate is not sufficient to support a hiring for a period of one year, but it is a factor that must be considered with other relevant facts."

The testimony of each of the plaintiffs was to the effect that the representative of the city who hired them agreed that their employment would be for a year. This was contradicted by the city's representative but the jury was free to believe either.

The nature of the positions, the fact that the Federal contract had one year from time of hiring to time of expiration, together with the testimony of the plaintiffs are all evidence supporting the conclusion reached by the jury.

The expression of "professional" and "moral" obligation to submit resignations if no action be taken by the mayor's office, may be construed either as a threat or a promise but it cannot fairly be regarded as a *fait accompli.*

It may be well to note that we are not here concerned with the power of the mayor to hire and fire unclassified personnel as he sees fit, but rather with the construction of particular contracts of hire.

The Court of Appeals is reversed and the trial court's judgment on the verdict is reinstated.

Appellants may tax costs.


T. E. BRENNAN, C. J., and DETHMERS, BLACK, T. M. KAVANAGH and ADAMS, JJ., concurred with T. G. KAVANAGH, J.

KELLY, J., did not sit in this case.