CLINK v BOARD OF COUNTY ROAD COMMISSIONERS OF
LIVINGSTON COUNTY

Docket No. 43023. Submitted January 3, 1980, at Lansing.—Decided
April 2, 1980. Leave to appeal applied for.

Walter Clink, superintendent of the Livingston County Road
Commission, was summarily discharged from his employment
by the Board of County Road Commissioners of Livingston
County. Clink brought an action against the Board of County
Road Commissioners and against the two individual commis-
sioners who had voted to discharge him, Melvin Simon and
James Featherly. The count against the individual defendants
was dismissed and the case was submitted to the jury on the
theory of breach of an implied contract of employment. Judg-
ment was entered on the jury verdict in favor of Clink, Living-
ston Circuit Court, Bert M. Hensick, J. The Board of County
Road Commissioners filed a motion for judgment notwithstand-
ing the verdict or, in the alternative, for a new trial. The
motion was denied, and the board appeals. *Held:*

1. The facts, when viewed in favor of the plaintiff as is
necessary when reviewing the denial of the defendant's motion
for a judgment notwithstanding the verdict, indicate that the
plaintiff established that he had a contract of employment for
an indefinite term. Such a contract is terminable by either
party at will. There were no distinguishing features or provi-
sions or special considerations passing from the plaintiff to the
board which would except the plaintiff from the general rule.
Therefore, the trial court erred in not granting the motion for
a judgment notwithstanding the verdict.

2. Clink had no property interest in his position which would
require the board to afford him due process protections.

Reversed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 46 Am Jur 2d, Judgments § 106 *et seq.*
[2] 53 Am Jur 2d, Master and Servant § 32.
  Validity and duration of contract purporting to be for permanent
  employment. 60 ALR3d 226.
[3] 63 Am Jur 2d, Public Officers and Employees § 177 *et seq.*
[4] 53 Am Jur 2d, Master and Servant § 37.

V. J. BRENNAN, J., dissented. He would hold that the plaintiff did have a property interest in his employment and therefore was entitled to certain due process protections. Because he was not afforded these protections, the plaintiff did have a cause of action and the case was properly submitted to the jury. He would affirm.

### OPINION OF THE COURT

1. MOTIONS — JUDGMENT NOTWITHSTANDING THE VERDICT.

A motion for a judgment notwithstanding the verdict is appropriately granted only where the facts taken inferentially in favor of the nonmoving party preclude judgment for the nonmoving party as a matter of law.

2. CONTRACTS — EMPLOYMENT CONTRACTS — PERMANENT EMPLOYMENT.

A contract for permanent employment, in the absence of some distinguishing features or provisions or of some special consideration passing from the employee to the employer other than the services to be performed by the employee, is a contract terminable with or without cause by either party at any time.

3. MASTER AND SERVANT — EMPLOYMENT — PROPERTY INTERESTS — DUE PROCESS.

A person must have a legitimate claim of entitlement to his employment in order to have a property interest in that employment, but where a public employee has no property right in his job, due process considerations do not attach.

### DISSENT BY V. J. BRENNAN, J.

4. MASTER AND SERVANT — EMPLOYMENT — PROPERTY INTERESTS — DUE PROCESS.

*A public employee had a property interest in his employment, entitling him to certain due process protections before being discharged from employment, where the employer's long-standing practice was to retain all employees whose work was satisfactory and where the employee in question had performed satisfactorily for 15 years.*

*John R. Brennan,* for plaintiff.

*Farhat, Burns & Story, P.C.* (by *Vittorio E. Porco),* for defendant.

Before: ALLEN, P.J., and V. J. BRENNAN and MacKENZIE, JJ.

ALLEN, P.J. Defendant, Board of County Road Commissioners of Livingston County, appeals the trial court's denial of its motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, following a five-day trial, after which a jury returned a verdict in favor of plaintiff, Walter Clink, in the amount of $152,000.

Plaintiff was hired by the Livingston County Road Commission as an assistant engineer in April, 1959. He continued in that position until August, 1969, at which time he was appointed superintendent. Plaintiff retained this position until April 25, 1974, when he was fired by a 2-1 vote of the defendant road commission. Commissioners Featherly and Simon voted to terminate plaintiff's employment with the road commission, with Commissioner Jackson dissenting.

A considerable amount of testimony at the trial addressed the question of the duration of plaintiff's employment with the road commission. Plaintiff conceded that at no time was his employment based upon a written contract with defendant. Rather, plaintiff testified that he believed the position to be permanent and that he thought that a former commissioner, Mr. Anderson, had told him the position was permanent, or at least available until he reached the mandatory retirement age of 65. At one point plaintiff testified that he thought defendant could not fire him for any reason short of good cause although he could leave the job if he gave adequate notice. In addition, plaintiff's statements at an earlier deposition were introduced at trial and illustrated that plaintiff felt his position was a career position and that he was employed for life if his work remained satisfactory.

Other witnesses, including an engineer and a former commissioner of the defendant road commission, testified that they believed employment with the road commission was for life and for as long as work was available and performed satisfactorily by the employee.

In the minutes of the commissioners' meeting at which plaintiff was appointed supervisor there is no indication of the duration of the employment. Plaintiff admitted that no formal action was ever taken by the board making him a lifetime employee. On cross-examination, defense counsel brought out statements plaintiff had made in an earlier deposition that no one from the road commission had ever told him orally or in writing that he was employed for the duration of his work life and that he served "at the pleasure of the board". Mr. Anderson, on cross-examination, denied informing plaintiff that plaintiff had a job for the rest of his life. The road commission employee clerk at the time of plaintiff's discharge testified that he did not believe he had a lifetime contract but served at the pleasure of the board and could be discharged anytime the board was dissatisfied with his performance, although he could recall no other person who had been discharged against their will. Two of the commissioners on the board when plaintiff was fired, Andrew Jackson and James Featherly, denied knowledge that plaintiff had a lifetime contract and thought they could discharge an employee with whom they were not satisfied.

There was conflicting testimony concerning the competency and qualifications of plaintiff as superintendent. Commissioner Jackson testified that he felt plaintiff was a competent supervisor and skilled road builder and that an independent con-

sulting firm had issued a report which indicated plaintiff was doing a good job. Mr. Anderson stated that plaintiff was competent and qualified and did a good job. There was similar testimony from a local township official and a former employee of the road commission.

Defense counsel introduced as evidence a number of complaints about road conditions. Commissioners Simon and Featherly both stated that they had good reasons for discharging plaintiff and listed specific complaints about his job performance.

Plaintiff was discharged at a road commission meeting on April 25, 1974. The subject of the discharge was not on the agenda of the regular meeting and came as a surprise to plaintiff, Commissioner Jackson and the clerk. At the end of the meeting, Chairman Simon called an executive session and dismissed plaintiff from the room. He then informed Commissioner Jackson that he and Commissioner Featherly had decided to fire plaintiff. When Commissioner Jackson tried to initiate a discussion, he was told by Commissioner Simon that there was no time to discuss it. Plaintiff was invited back into the room and the resolution discharging him was made.

The matter of the discharge had never been discussed with Commissioner Jackson and he was given no opportunity to contribute to the decision. Commissioner Featherly testified that the discharge of plaintiff was Commissioner Simon's idea. The two of them had met at a private session on April 11, 1974, at which they decided to fire plaintiff. The meeting was held just after a regular board meeting at which all three commissioners had been present. Commissioner Simon admitted that plaintiff had no prior knowledge that he was

going to be fired on April 25, 1974, and no hearing was ever offered plaintiff.

Defendant's claim on appeal is that the trial court erred in failing to grant its motion for a judgment notwithstanding the verdict. Such a motion is appropriately granted only if the facts taken inferentially in the nonmoving party's favor preclude judgment for the nonmoving party as a matter of law. *Jackson v Fox,* 69 Mich App 283, 285; 244 NW2d 448 (1976), *lv den* 399 Mich 863 (1977), *Ebling v Masco Corp,* 79 Mich App 531, 533; 261 NW2d 74 (1977), *lv gtd* 402 Mich 950j (1978), *Sabraw v Michigan Millers Mutual Ins Co,* 87 Mich App 568, 571; 274 NW2d 838 (1978), *lv gtd* 406 Mich 968 (1979). Applying this standard, we find that the trial court erred because the facts taken inferentially in plaintiff's favor preclude judgment on Count I of the complaint as a matter of law.

The case was tried on the first count of a four-count complaint in which plaintiff requested a money judgment against defendant for the alleged breach of a lifetime employment contract with the defendant road commission. For the purpose of reviewing the trial judge's denial of the defendant's motion for judgment N.O.V., we proceed on the assumption that the plaintiff established the existence of a "lifetime" employment contract and that he had been discharged without good cause and without adequate notice. On appeal plaintiff does not dispute this conclusion but prefers to refer to his situation as "an implied contract of employment for a specified term", to wit: employment with the road commission for the rest of his work life. Regardless of the phraseology used, it is clear that the case was tried, considered and determined by the jury on the theory that plaintiff's

employment with the road commission was for the rest of his work life.[1]

Assuming plaintiff proved that he had an implied contract for lifetime employment, he would still have no cause of action for breach of contract based on the length of his previous employment with the defendant road commission. Under Michigan law a contract for permanent employment is a contract terminable with or without cause by either party at any time. In *Lynas v Maxwell Farms,* 279 Mich 684, 687; 273 NW 315 (1937), the rule was stated thus:

"Contracts for permanent employment or for life have been construed by the courts on many occasions. In general it may be said that in the absence of distinguishing features or provisions or a consideration in addition to the services to be rendered, such contracts are indefinite hirings, terminable at the will of either party."

This rule has been consistently followed by Michigan courts, *Sullivan v Detroit, Ypsilanti & Ann Arbor Railway,* 135 Mich 661; 98 NW 756 (1904), *O'Connor v Hayes Body Corp,* 258 Mich 280; 242 NW 233 (1932), *Lynas v Maxwell Farms,* 279 Mich 684; 273 NW 315 (1937), *Adolph v Cookware Co of America,* 283 Mich 561; 278 NW 687 (1938), *Hawt-*

---

[1] Defendant asserts that the proofs offered at trial established only that plaintiff's employment was of indefinite duration and not a contract for life. Defendant contends that contradictory testimony of plaintiff that he could leave the job if he gave adequate notice or he served at the pleasure of the Board of Commissioners indicated a lack of mutuality of obligation for a lifetime contract. *Paxson v Cass County Road Comm,* 325 Mich 276, 283; 38 NW2d 315 (1949), *Toussaint v Blue Cross & Blue Shield of Michigan,* 79 Mich App 429, 433; 262 NW2d 848 (1977), *lv gtd* 402 Mich 950h (1978). However, the fact that the jury found such a contract existed, as evidenced by their verdict, indicates that the jury chose to believe plaintiff's other testimony; that he had a contract for life, see *Paxson v Cass County Road Comm, supra.* We are bound by the jury's factual determination in this regard.

*horne v Metropolitan Life Ins Co,* 285 Mich 329; 280 NW 777 (1938), *Ambrose v Detroit Edison Co,* 367 Mich 334; 116 NW2d 726 (1962), *Hernden v Consumers Power Co,* 72 Mich App 349; 249 NW2d 419 (1976), *Toussaint v Blue Cross & Blue Shield of Michigan,* 79 Mich App 429; 262 NW2d 848 (1977), *lv gtd on other grds* 402 Mich 950h (1978), *Rowe v Noren Pattern & Foundry Co,* 91 Mich App 254; 283 NW2d 713 (1979), *Milligan v The Union Corp,* 87 Mich App 179; 274 NW2d 10 (1978), and see *McLaughlin v Ford Motor Co,* 269 F2d 120 (CA 6, 1959), *Percival v General Motors Corp,* 539 F2d 1126 (CA 8, 1976).

Thus, as recently noted in *Rowe v Noren Pattern & Foundry, supra* at 258:

"In Michigan, as well as in a majority of states, the rule is well established that, in the absence of some special consideration passing from the employee to the employer, other than the services to be performed by the employee, a contract for employment for an indefinite term is a contract which may be terminated at any time by either party for any reason or for no reason at all."

Accordingly, since the proofs offered at trial, viewed in the light most favorable to plaintiff, establish the existence of a lifetime contract of employment with the defendant road commission, we must conclude that in the absence of distinguishing features or some special consideration it was a contract terminable at the will of either party. Since plaintiff was fired by a two to one vote of the road commission, pursuant to their statutory authority *(cf.,* MCL 224.9; MSA 9.109), this exercise of the commission's will terminated any employment relationship previously in existence between the two parties.

As noted above, however, the courts of this state have enforced an employment contract of indefinite duration where there are some "distinguishing features or provisions" or "some special consideration passing from the employee to the employer, other than the services to be performed by the employee". Plaintiff contends that there are distinguishing features in his situation which place him within the exception to the general rule, and thus require enforceability of his lifetime employment contract with defendant. Two grounds were advanced during oral arguments in support of this contention. First, plaintiff claims that his nearly 5 years as superintendent, and the fact that no one else had ever been fired from a position with the road commission, establishes a history of longevity in the position. Second, plaintiff asserts that he was denied retirement benefits for which he would have qualified at the age of 65, 19 years from the time of his discharge.

Our review of the case law on this question illustrates the lack of merit in plaintiff's contentions. One line of cases holding that a contract for permanent employment is binding and enforceable beyond the termination of the employee by the employer involves situations in which the employee releases a claim held by him against the one offering the employment. *Hobbs v Brush Electric Light Co,* 75 Mich 550; 42 NW 965 (1889), *Brighton v Lake Shore & M S R Co,* 103 Mich 420; 61 NW 550 (1894), *Stearns v Lake Shore & M S R Co,* 112 Mich 651; 71 NW 148 (1897), *Sax v Detroit, G H & M R Co,* 125 Mich 252; 84 NW 314 (1900). This rule has been adopted and applied in situations in which "there is to be found an element of consideration in addition to the services for which the contract was made". *Lynas v Maxwell Farms,*

*supra* at 688. Thus, for example, in *Western Newspaper Union v Kitchel,* 201 Mich 121; 166 NW 1021 (1918), and *Rowe v Noren Pattern & Foundry, supra,* it was held that a person who gives up a secured position with the competitor of an anticipated employer, in order to accept a position with that employer, is entitled to comparable job security if the parties considered that factor as a condition for accepting the new position. And see *Ebling v Masco Corp, supra, cf., Hackett v Foodmaker, Inc,* 69 Mich App 591; 245 NW2d 140 (1976), *lv den* 399 Mich 823 (1977). Nothing of this sort appears to exist with regard to plaintiff's situation. The most that could be said regarding plaintiff's position with the road commission is that he placed himself in a position so that he might perform his contract with defendant. He gave up no secured position in order to accept his appointment with the road commission. And even if he did, this factor did not comprise part of the consideration for his appointment. This does not constitute a "distinguishing feature", as a matter of law. *Lynas v Maxwell Farms, supra* at 688-689, *Adolph v Cookware Co of America, supra* at 568, see *Goldstein v Kern,* 82 Mich App 723, 727-728; 267 NW2d 165 (1978).

Another line of cases holds that where the employee's discharge contravenes some settled public policy of this state, an employee serving under a contract terminable at will has a cause of action for wrongful discharge. *Toussaint v Blue Cross & Blue Shield of Michigan, supra* at 434, *Milligan v The Union Corp, supra* at 182, *Trombetta v Detroit, T & I R Co,* 81 Mich App 489, 495; 265 NW2d 385 (1978). Thus, for example, the discharge of an employee serving under an indefinite contract of employment cannot be terminated on the

sole basis that the employee engaged in lawful concerted labor activities, was the wrong race or sex, see cases cited in *Carry v Consumers Power Co,* 64 Mich App 292, 296 fn 1; 235 NW2d 765 (1975), or filed a lawful workmen's compensation claim against the employer, *Sventko v Kroger Co,* 69 Mich App 644; 245 NW2d 151 (1976). No such related allegation was raised or established in the case at bar.

We have not found, and plaintiff does not cite, any case in which plaintiff's mere longevity or loss of possible pension benefits enables him to defeat the terms of a contract otherwise terminable at will. Accordingly, defendant's decision to discharge plaintiff as superintendent of the road commission was, based upon the proofs submitted at trial, irreproachable as a matter of law. In so ruling, we are not unmindful of cases such as *Paxson v Cass County Road Comm,* 325 Mich 276; 38 NW2d 315 (1949), and *Hall v Detroit,* 383 Mich 571; 177 NW2d 161 (1970). In those cases, the proof offered by plaintiff at trial established the existence of a contract for employment for a given period of time: one year's service. The question in such cases involved the actual term of employment for the plaintiff employee. Here, though defendant offered contrary evidence, the plaintiff sought to establish, and the jury was persuaded, that plaintiff's term of employment was for life. In so doing, perhaps plaintiff proved too much, for the result was to justify as a matter of law defendant's ability to terminate plaintiff's employment at any time and for any reason. Defendant did so, and the trial court's error in failing to grant defendant's motion for judgment notwithstanding the verdict stems from its failure to perceive this legal distinction.

Plaintiff further contends that, regardless of the

existence of an implied contract of employment, he had a property interest in his public employment and therefore was entitled to certain procedural protections under the due process clauses of the United States and Michigan Constitutions. The trial judge agreed and instructed the jury as follows:

"I charge you that public employment is a property right of an individual employee. That is entitled to the safeguard of due process of law, and guaranteed by the Michigan and the United States Constitutions."

In charging the jury, the judge indicated that he was relying on *Casad v City of Jackson,* 79 Mich App 573; 263 NW2d 19 (1977), *Perry v Sindermann,* 408 US 593; 92 S Ct 2694; 33 L Ed 2d 570 (1972). Defendant objected to the instruction.

In each of the above cited cases, the aggrieved employee had a property interest in his public employment with the defendant. In *Casad, supra,* plaintiff had a property interest since he enjoyed civil service status prior to his discharge under constitutionally defective review procedures. In *Perry v Sindermann, supra,* a nontenured teacher was permitted to show that nonretention deprived him of a property interest because a de facto tenure system existed at the institution. In both cases, reference to state law indicated that the nature of the interest justified due process protection. *Board of Regents of State Colleges v Roth,* 408 US 564, 577; 92 S Ct 2701; 33 L Ed 2d 548 (1972). Thus, where the public employee has no property right in his job, due process considerations do not attach. *Bishop v Wood,* 426 US 341, 347; 96 S Ct 2074; 48 L Ed 2d 684 (1976), *Scott v Ann Arbor,* 76 Mich App 535, 539-540; 257 NW2d 157 (1977).

In contrast to *Casad, supra,* and *Perry v Sindermann, supra,* plaintiff in the case at bar had no property interest in his position as superintendent of the county road commission.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v Roth,* 408 US at 577.

As noted in our earlier discussion, plaintiff's contract for lifetime employment accorded him no "legitimate claim of entitlement" to a job until age 65. Rather, he was subject to discharge upon any whim or reason by the defendant road commission. This has been and continues to be the law of this state where contracts for permanent employment are involved. Though the equities seem to be on the plaintiff's side, the law and the "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits" are not. *Id.* Since plaintiff's job could be terminated for a "good reason, bad reason, or no reason at all", it follows that he had no property right in his job, and therefore was not entitled to the protections offered by the due process clauses of the United States and Michigan Constitutions.

The trial judge erred in permitting the jury to consider plaintiff's due process contentions as a matter of law. Accordingly, he erred in failing to grant defendant's motion for a judgment notwithstanding the verdict.

Reversed. No costs, a question of public interest being involved. MACKENZIE, J., concurred.

V. J. BRENNAN, J. *(dissenting).* I respectfully

dissent as I feel plaintiff did have a cause of action.

In most patronage jobs, the employee serves at the whim of the appointing authority. Accordingly, the occupants of such jobs usually change with the change of administrations. Here, however, plaintiff was in the employ of the road commission for approximately 15 years. There was testimony that other employees who served in appointed positions had never been discharged. In fact, there existed within this department an unwritten rule that employment would continue as long as an employee's work was satisfactory.

The record shows the following: plaintiff's work was more than satisfactory, no grievances had ever been filed against plaintiff; and not only was plaintiff's contract automatically renewed each year but there existed an implied agreement for continuous employment. The record further shows that plaintiff was summarily discharged, no notice of termination and no reasons for termination were given.

The majority states that although the equities are on plaintiff's side, plaintiff proved too much by showing that the contract was for life and therefore could be terminated "for a good reason, bad reason or no reason at all". The majority points out that if plaintiff had a property interest in his employment, defendant would have been required to provide him certain due process procedural protections before summarily discharging him. *Casad v City of Jackson,* 79 Mich App 573; 263 NW2d 19 (1977), and *Perry v Sindermann,* 408 US 593; 92 S Ct 2694; 33 L Ed 2d 570 (1972).

From the facts which were presented here I would find that, as in *Perry v Sindermann,* plaintiff had a property interest in his public employ-

ment. I would term this property interest, for want of a better term, de facto tenure, which arose due to the road commission's long-established practice of retaining all employees whose work was satisfactory, regardless of any changes of administration which occurred. As the record shows, this practice lulled all the employees into a sense of security. All things considered, there clearly existed in all these employees' minds a right to assume that they had a right to their job, and that right accorded them certain procedural protections.

Since plaintiff was not afforded these protections, I believe he had a cause of action and the trial court was not in error in submitting this issue to the jury.

I would affirm.